**FREDONIA STATE BANK, Executor of the Estate of Claytor Blake, III, Deceased, et al., Petitioners,**

v.

**GENERAL AMERICAN LIFE INSURANCE COMPANY, Respondent.**

No. D–3589.

Supreme Court of Texas.

Argued Oct. 14, 1993.

Decided June 2, 1994.

Rehearing Overruled Sept. 8, 1994.

Charles B. Lord, C.L. Ray, Austin, K. Scott Brazil, Houston, and L. Giles Rusk, Nacogdoches, for petitioners.

Steven Troy Roper and Linda O. Poland, Lufkin, for respondent.

ON APPLICATION FOR WRIT OF ERROR TO THE COURT OF APPEALS FOR THE TWELFTH DISTRICT OF TEXAS.

Justice GONZALEZ delivered the opinion of the Court, in which all Justices join.

The principal issue in this case is whether an insurance company may assert the defense of misrepresentation for statements made in an application not attached to a life insurance policy. In reversing and remanding a jury verdict in favor of an insured, the court of appeals considered evidence contained in an application for life insurance that was not attached to, or made a part of, the life insurance policies at issue. 884 S.W.2d 167. Because article 21.35 of the Texas Insurance Code prohibits reliance on an unattached application to defeat payment of life insurance proceeds, we reverse the judgment of the court of appeals and remand the cause to that court for further proceedings.

## I.

Claytor Blake III, died as the result of a gun-shot wound to the head. At the time of his death, he owned two life insurance policies, each in the amount of $250,000, issued by General American. General American refused the beneficiaries' claims, and Fredonia State Bank (the "Bank"), as assignee of one of these policies and as executor of the Claytor Blake estate, sued to collect the proceeds of the policies. General American asserted two defenses to the claim, that Blake had committed suicide, and that Blake had made misrepresentations regarding his medical history which were material to the risk assumed by General American. The Bank denied that the application contained misrepresentations, and argued that the application could not, in any event, provide the basis for a misrepresentation defense because the application was not attached to the policies issued to Blake. After evidence on both of these theories was introduced at trial, the jury found that Blake did not commit suicide, that the medical portion of Blake's application was not attached to the insurance policies, and that Blake did not misrepresent his medical history in order to obtain insurance, among other findings favorable to Fredonia Bank.

The trial court rendered judgment for the Bank for the proceeds of both policies. The judgment signed by the trial court did not award all of the relief sought by the Bank, however, and the Bank appealed. General American responded with cross points attacking the sufficiency of the evidence to support the findings concerning misrepresentation. The court of appeals sustained General American's points that the great weight and preponderance of the evidence was contrary to the jury's failure to find that Blake made misrepresentations in order to obtain insurance. The court therefore reversed and remanded for a new trial.

## II.

As a preliminary matter, we must consider whether General American's factual sufficiency claims were properly before the court of appeals. General American raised factual sufficiency points in a motion for new trial filed after the trial court originally rendered judgment. Later, the trial court signed a second judgment. The Bank contends that only a motion for new trial filed *after* the court's second judgment would preserve factual sufficiency points. We disagree.

After the jury returned a verdict generally favorable to the Bank, General American filed its motion for judgment not withstanding the verdict. The motion, filed May 3, 1990, asked the court to disregard several controlling issues, and render a take-nothing judgment.

The trial court signed a judgment on May 14, 1990. The court granted General American's motion for judgment NOV in part disregarding findings of bad faith; the court rendered judgment on the verdict on the remaining issues, however, including actual and punitive damages, and attorney fees.

On June 1, 1990, General American filed its Motion for New Trial and to Correct or Reform Judgment. The motion asked the court to set aside its judgment of May 14, 1990 and grant a new trial for factual sufficiency reasons. Alternatively, General American requested a modification of the judgment to reduce the amount of attorneys fees. The court conducted a hearing on the motion but never ruled on it.

On July 27, 1990, the trial court signed an order ruling on General American's motion for judgment NOV consistent with the prior judgment, except that the trial court disregarded the finding on attorney fees. In a separate handwritten document entitled "Order", the court recited that the judgment "should be reformed" by deleting $276,142.45 of the attorney fees, "to reflect the ruling of the court on Defendant's Motion for Judgment Notwithstanding the Verdict signed this date."

On August 27, 1990, the trial court rendered its "Reformed Final Judgment" which was substantially the same as its prior judgment, except that the trial court deleted the award of attorneys fees. Without further motion in the trial court, General American filed its appeal bond on September 4, 1990.

In its initial opinion, the court of appeals invited the parties to address whether

the August judgment was the final judgment and consequently, whether the court of appeals had jurisdiction. Despite the Bank's position to the contrary, the court of appeals correctly held that because the trial court changed its judgment during the period of its plenary power, the time for perfecting appeal started over with the August judgment. Since the appeal bond was filed less than 30 days later, the court of appeals properly exercised jurisdiction. 884 S.W.2d 167; *accord, Old Republic Ins. Co. v. Scott,* 846 S.W.2d 832, 833 n. 2 (Tex.1993).

In this court, the Bank shifts the emphasis of its argument from jurisdiction to preservation of error. The Bank contends the final judgment signed on August 27, 1990, was not challenged by a motion for new trial, therefore General American has waived any complaint about the factual sufficiency of the evidence supporting the jury's verdict.

■ General American asserts in part that its motion for new trial preserved error in the subsequent modified judgment under Rule 58(c) of the Texas Rules of Appellate Procedure which states:

> (c) In civil cases, if the trial court has signed an order modifying, correcting, or reforming the order appealed from, or has vacated that order and signed another, any proceedings relating to an appeal of the first order may be considered applicable to the second....

TEX.R.APP.P. 58(c). To complain on appeal that a jury finding is not supported by factually sufficient evidence, or is against the overwhelming weight of the evidence, a party must have first raised the matter in a motion for new trial. TEX.R.CIV.P. 324(b)(2), (3).

The Bank contends that Rule 58(c) does not apply for two reasons. First, the Bank argues the motion for new trial should not be considered because it expressly assailed only the first judgment, not the second judgment.[1] Second, the Bank claims the motion for new

trial was overruled by operation of law, and therefore was not a viable pleading at the time the August 27 Judgment was signed.

We conclude that under Rule 58(c) a motion for new trial relating to an earlier judgment may be considered applicable to a second judgment when the substance of the motion could properly be raised with respect to the corrected judgment. *See, e.g., Gill v. Rosas,* 821 S.W.2d 689, 690 (Tex.App.—El Paso 1991, no writ); *Alford v. Whaley,* 794 S.W.2d 920, 922–23 (Tex.App.—Houston [1st Dist.] 1990, no writ); *Syn–Labs, Inc. v. Franz,* 778 S.W.2d 202, 203–04 (Tex.App.—Houston [1st Dist.] 1989, no writ); *Clark v. McFerrin,* 760 S.W.2d 822, 825 (Tex.App.—Corpus Christi 1988, writ denied); *Miller v. Hernandez,* 708 S.W.2d 25, 26–27 (Tex.App.—Dallas 1986, no writ) (construing the predecessor to Rule 58, TEX.R.CIV.P. 377a (repealed 1986)). Our holding does not fully resolve the Bank's arguments, however. The Bank asserts that a motion for new trial that has been overruled by operation of law is no longer a viable motion, and therefore is not effective to challenge a subsequent judgment. The Bank contends that General American's motion for new trial was overruled by operation of law on July 28, ignoring the trial court's order on July 27. Assuming the Bank is correct that the motion for new trial was overruled, we do not agree that it failed to preserve error on the later judgment.

The Bank relies for authority on the case of *A.G. Solar & Co., Inc. v. Nordyke,* 744 S.W.2d 646 (Tex.App.—Dallas 1988, no writ). In *Solar,* the court held that a motion for new trial was inadequate to assail a second judgment rendered after the motion had been overruled by operation of law. *Id.* at 647. The motion for new trial in that case had been overruled by operation of law before the trial court rendered a changed judgment. The court of appeals held that a motion for new trial that has already been disposed of "can no longer 'assail' a subsequent judgment under rule 306c of the Texas

---

1. Defendant's Motion for New Trial and to Correct or Reform Judgment provides:

   Comes now General American Life Insurance Company, defendant herein, and moves this Court pursuant to Texas Rules of Civil Procedure 320 and 329b *to set aside the Judgment rendered on the 14th day of May, 1990* in

   the above-styled and numbered cause and to order a new trial, and to correct or reform this Judgment, and in support thereof shows the following.

   .   .   .   .   .

   (Emphasis added.)

Rules of Civil Procedure, and can no longer 'be properly applied' to that judgment under rule 58 of the Texas Rules of Appellate Procedure." *Id.* at 647–48. The issue in *Solar*, however, was not whether the motion for new trial preserved error, but whether it was effective to extend the appellate time table.

Rule 58 is not limited by its language to motions that are "live" when the final judgment is rendered, although for jurisdictional purposes, the *Solar* court and a number of other courts of appeals have engrafted such a requirement onto the rule by judicial interpretation. Other than *Solar*, in each of the cases in which the court engrafted the "live" pleading requirement to the rule, the court ultimately held the motion for new trial filed in the case was viable, and therefore could be considered as a premature motion. *Syn–Labs*, 778 S.W.2d at 205; *Johnson v. Tom Thumb Stores, Inc.*, 771 S.W.2d 582, 586 (Tex.App.—Dallas 1989, writ denied); *Miller*, 708 S.W.2d 25, 26 (Tex.App.—Dallas 1986, no writ).

We have not previously addressed this construction of Rule 58. Another court has declined to follow the analysis of *Solar*, however. *Harris County Hosp. Dist. v. Estrada*, 831 S.W.2d 876 (Tex.App.—Houston [1st Dist.] 1992, no writ). In *Estrada*, the court observed the policy reasons for the rules concerning premature filings:

> The Texas Supreme Court has twice enacted rules to assure that cases are not dismissed because the motion for new trial was filed too soon. Neither of those rules limits their application to "live" pleadings. To require a "live" pleading here would defeat the purpose of those rules.

*Id.* at 880.

We conclude that the better reasoned application of Rule 58, more congruent with the Rule's purpose, is set forth in *Estrada*. The trial court was fully apprised of General American's complaints in its motion for new trial and the hearing on the motion, and the court rejected those arguments when it reformed judgment. Therefore the requirements of Rule 52 of the Texas Rules of Appellate Procedure for preservation of error have been fully satisfied. The result of the Bank's reasoning would be that legal sufficiency points were preserved, but factual sufficiency points expressly presented in a motion for new trial were waived for failure to file a second identical motion. To read into the rules a requirement that a redundant motion for new trial is necessary to preserve error would defeat the goal of hearing cases on their merits whenever possible, without advancing any corresponding policy considerations.[2] The Rules of Appellate Procedure, and particularly Rule 58, should not be read to defeat the right to appeal except when such a construction is absolutely necessary. We hold that a motion for new trial overruled by operation of law, which complains of error brought forward in a subsequent judgment, preserves the complaints to the extent applicable to the subsequent judgment, under Rule 58 of the Texas Rules of Appellate Procedure. We therefore disapprove of *Solar* to the extent that it can be read to mean that a motion for new trial overruled by operation of law is insufficient to preserve error in a subsequent judgment under Rule 58. The court of appeals here properly considered the sufficiency of evidence points of error raised in General American's prematurely-filed motion for new trial.[3]

### III.

Among the points raised by General American in the court of appeals, the court sus-

---

2. We do not purport to resolve the conflict between *Solar* and *Estrada* on the question of whether a motion for new trial overruled by operation of law is effective to extend the appellate deadline from a subsequent judgment.

3. General American also asserts that its motion for new trial should be considered a prematurely-filed motion, sufficient to preserve error in the subsequent modified judgement under Rule 306c of the Texas Rules of Civil Procedure. A number of authorities apply Rule 306c of the Texas Rules of Civil Procedure and Rule 58(c) of the Texas Rules of Appellate Procedure in tandem in their

analysis of "second judgment" problems. *See, e.g., Alford*, 794 S.W.2d at 923; *Syn–Labs*, 778 S.W.2d at 203–04; *Solar*, 744 S.W.2d at 647–48. *See generally* 6 ROY W. MCDONALD, TEXAS CIVIL PRACTICE IN DISTRICT AND COUNTY COURTS § 12.4 (Richard Orsinger ed., 1992); Mike Hatchell & Lori M. Gallagher, *What You Don't Know Can Hurt You—A "Baker's Dozen" of Landmines in Texas Practice, in* STATE BAR OF TEXAS PROF.DEV.PROGRAM, ADVANCED CIVIL APPELLATE PRACTICE COURSE, A, A–11, A–12 (1993). Because we conclude that Rule 58(c) is sufficient to preserve error in this

tained legal and factual sufficiency challenges to the jury's findings that the medical portion of Blake's application for life insurance was not attached to his policies, and held that the jury's finding that Blake did not misrepresent his medical history in order to obtain life insurance was contrary to the great weight of the evidence. In holding for General American, the court of appeals held that whether or not the application was attached to the policy is irrelevant to whether the insurance company could assert misrepresentations in the application as a defense. The court of appeals did not agree with the Bank's assertion that, under article 21.35 of the Texas Insurance Code, General American could not rely on any misrepresentation contained in the applications because the jury found in questions two and three, that the applications were not attached to the insurance policies. Article 21.35 has been interpreted to mean that the application must be attached to the policy as a precondition to its use in the insurer's defense of misrepresentation. *Johnson v. Prudential Ins. Co. of Am.*, 519 S.W.2d 111, 114 (Tex.1975). The purpose of this requirement is to make sure that the insured will have the material terms of the contract at hand during the insured's lifetime in order to correct any misrepresentations which have been made the basis of the insurance coverage. *Id.* at 113–14.

The court of appeals initially sustained General American's legal and factual sufficiency challenges to the jury's answers concerning attachment of the applications to the policies on the grounds that the Bank failed to adequately challenge General American's statement of the facts in its brief. Rule 74(f) of the Texas Rules of Appellate Procedure provides in pertinent part that "(a)ny statement made by appellant in his original brief as to the facts or the record may be accepted by the court as correct unless challenged by the opposing party." Tex.R.App.P. 74(f).

The Bank's reply point in the court of appeals was: "THERE IS SUFFICIENT EVIDENCE TO SUPPORT THE JURY'S ANSWER TO QUESTION 2 AND 3 [in

which the jury found the applications were not attached to the policies]." Rather than support the point with record citations, however, the Bank argued that General American's points were moot because of the failure of the jury to find misrepresentation. This general, conclusory statement in the Bank's brief cannot be held to constitute a challenge to the specific statements of fact and citations to the record contained in General American's brief. *See Hercules, Inc. v. Eilers*, 458 S.W.2d 221, 228 n. 8 (Tex.Civ.App.—Beaumont 1970, writ ref'd n.r.e.), *cert. denied*, 403 U.S. 937, 91 S.Ct. 2251, 29 L.Ed.2d 717 (1971) (holding that the appellees' statement at the beginning of their reply brief, to the effect that they did not accept any statement of fact by the defendant inconsistent with their position, was not "acceptable within the spirit and meaning of Rule 419") [4]; *see also* John Hill Cayce, Jr., *Preserving Error on Appeal: A Practical Guide for Civil Appeals in Texas*, 23 St. Mary's L.J. 15, 91 (1991) (stating that case law requires the challenge to be "directed to specific matters"); Robert Lee Bobbitt, Jr., *Briefing in the Courts of Civil Appeals*, 25 Tex.B.J. 273, 328 (1962) (arguing that under Rule 419 the "better practice" is to point out each statement that the appellee challenges). If under Rule 74(f) an appellee can prevent the court of appeals from relying on an appellant's statement of facts without offering any contrary factual assertions or citations to the record, the court would be forced to either search the record for evidence itself or order rebriefing under Rule 74(p). Tex.R.App.P. 74(p). The first option has never been considered part of an appellate court's duties in conducting judicial review. *See Saldana v. Garcia*, 285 S.W.2d 197, 201 (Tex.1955) (holding that it is "not the duty of the Court of Civil Appeals to make an independent search of the statement of facts"); *Most Worshipful Prince Hall v. Jackson*, 732 S.W.2d 407, 412 (Tex.App.—Dallas 1987, writ ref'd n.r.e.) (same); *Hercules*, 458 S.W.2d at 228 n. 8 (holding that construing the appellees' broad

---

case, we do not consider the applicability of Rule 306c.

4. Texas Rule of Civil Procedure 419 was repealed effective September 1, 1986. Its provisions were reenacted as the last sentence of Rule 74(f). Tex. R.App.P. 74(f).

statement as a challenge "would render meaningless Rule 419 and thrust a burden upon the court which properly should be assumed by the appellees"); *Rubenstein & Son Produce, Inc. v. State*, 272 S.W.2d 613, 621 (Tex.Civ.App.—Dallas 1954, writ ref'd n.r.e.) (holding that "it is not ordinarily our duty to search the record for supporting evidence"). Requiring the court of appeals to order rebriefing is not only undesirable but not warranted by the rules. Rule 74(p) is clearly discretionary—a court of appeals "may" order rebriefing for flagrant violations of the rule. Tex.R.App.P. 74(p).[5] Allowing statements such as the Bank's to constitute a challenge would deprive the court of any discretion in applying Rule 74(p). Any time one party raised a factual sufficiency challenge and the opposing party did not adequately brief its response, the court would have to delay judicial review pending rebriefing by that party. · Given the heavy caseload of our courts of appeals, the resulting burden cannot be countenanced.

■ The Bank argues that even if its challenge was insufficient, our decision in *Inpetco, Inc. v. Texas American Bank/Houston N.A.*, 729 S.W.2d 300 (Tex.1987) (per curiam), places a duty on the court of appeals to order rebriefing. We disagree. In refusing Inpetco's application for writ of error with the notation "no reversible error," we stated that the court of appeals erred in affirming. the trial court's judgment on the basis of the appellant's briefing inadequacies without first ordering rebriefing. *Id.* at 300. We based our holding on Tex.R.App.P. 83, which provides: "A judgment shall not be affirmed or reversed or an appeal dismissed for defects or irregularities, in appellate procedure, either of form or substance, without allowing a reasonable time to correct or amend such defects or irregularities...."[6] This per curiam opinion, and its implications for the long-standing rule that a point may be waived due to inadequate briefing, has been the source of some confusion to bench and bar alike. *See* David M. Gunn, *Unsup-*

*ported Points of Error on Appeal*, 32 S. Tex.L.Rev. 105, 121–31 (1990) (arguing that the "intermediate courts have not known what to do with *Inpetco*," and analyzing the various reactions of the courts of appeals). However, its potential impact on the workload of our courts of appeals was tempered by the decision in *Davis v. City of San Antonio*, 752 S.W.2d 518, 521 (Tex.1988). *Davis* distinguished *Inpetco* on the ground that the appellee waited until after oral argument to move to amend its brief. In *Davis* we stated that under Tex.R.App.P. 136(g), justice did not require us to grant the motion to amend the deficient brief in these circumstances. *Id.* While that delay may have been important in *Davis*, the principle underlying the opinion in *Davis* is the settled rule that an appellate court has some discretion to choose between deeming a point waived and allowing amendment or rebriefing, and that whether that discretion has been properly exercised depends on the facts of the case. *See King v. Graham Holding Co.*, 762 S.W.2d 296, 298 (Tex.App.—Houston [14th Dist.] 1988, no writ) (stating the longstanding rule that a court will not consider matters which are not properly presented but noting that "[o]ccasionally the [supreme] court [has] exercised its discretion to order a point rebriefed"). Despite its broad language, *Inpetco* should not be read as overruling or modifying prior cases holding that error may be waived by inadequate briefing—cases that were handed down while the predecessors of Rules 83 and 185 were in effect but make no mention of any duty to order rebriefing. *See, e.g., Trenholm v. Ratcliff*, 646 S.W.2d 927, 934 (Tex.1983); *Gulf Coast State Bank v. Emenhiser*, 562 S.W.2d 449, 452–53 (Tex. 1978); *Burgess v. Sylvester*, 182 S.W.2d 358, 360 (Tex.1944); *Arrechea v. Arrechea*, 609 S.W.2d 852, 855 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.).

*Davis* relied on an advisory opinion of the Subcommittee on Interpretation of the Texas Rules of Practice and Procedure in Civil Cases, which stated that a party should move

---

5. Rule 74(*o*) uses similarly discretionary language concerning the disposition of motions to amend: "Briefs may be amended or supplemented at any time when justice requires...." Tex. R.App.P. 74(*o*).

6. The provisions of Rule 83 apply to the courts of appeals and duplicate those of Rule 185, which apply to this Court. *See* Tex.R.App.P. 185.

to amend its brief when he or she has failed to comply with the briefing rules. *See Civil Procedure,* 7 Tex.B.J. 281, 283 (1944). The Subcommittee quoted approvingly from *Cochran v. Wool Growers Central Storage Co.,* 140 Tex. 184, 166 S.W.2d 904, 906 (1942) (on motion for rehearing), in which this Court held that the precursors to Rules 136(g) and 185 "*authorize* this Court to grant one who prosecutes a writ of error to this Court the right to amend his application, where it is defective either as to form or substance," and stated that a defective application can be amended "at any time when, *in the opinion of the Court,* justice so requires." Cochran, 166 S.W.2d at 906 (emphasis added). The Subcommittee's citation to *Cochran* is evidence that Rules 83 and 185, when read in conjunction with the rest of our appellate rules, do not divest appellate courts of their traditional discretion in ordering rebriefing or allowing amendments.

Allowing our intermediate courts some discretion in ordering rebriefing is necessary to balance the twin objectives of a liberal and just construction of procedural rules and the prompt and efficient resolution of appeals. *See A.C. Collins Ford, Inc. v. Ford Motor Co.,* 807 S.W.2d 755, 760 (Tex.App.—El Paso 1990, writ denied) (on motion for rehearing) (complaining that *Inpetco* does not help a busy court in the disposition of its case load); *King,* 762 S.W.2d at 299 (construing *Davis* as holding that courts must have some discretion in this area, and characterizing as "intolerable" a situation where an appellate court is forced to send back deficient briefs for rebriefing, even after argument); *see also Elder v. Bro,* 809 S.W.2d 799, 802 (Tex. App.—Houston [14th Dist.] 1991, writ denied) (quoting *King*); *Henry S. Miller Management Corp. v. Houston State Assoc.,* 792 S.W.2d 128, 135 (Tex.App.—Houston [1st Dist.] 1990, writ denied) (same).

■ Our determination that the court of appeals was justified in accepting General American's statement of facts under Rule 74(f) does not end our inquiry, however. As the Bank points out, the court of appeals made the leap from applying Rule 74(f) to sustaining General American's legal and factual sufficiency challenges without any intervening analysis. Even accepting General American's facts as true, the court was still required to conduct a sufficiency review of those facts. *See Whatley v. Whatley,* 493 S.W.2d 299, 302 (Tex.Civ.App.—Dallas 1973, no writ); *Martinez v. Martinez,* 384 S.W.2d 924, 925 (Tex.Civ.App.—Corpus Christi 1964, no writ). We perceive no reason why the dictate of *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986), that an appellate court must detail its factual sufficiency review, should not apply merely because the court is dealing with a discrete set of accepted facts. Therefore, on remand, the court of appeals should conduct a *Pool* analysis to determine if the evidence recited in General American's brief shows that the jury's findings were against the great weight and preponderance of the evidence, as General American asserts.[7]

## IV.

The court of appeals further erred in holding that the finding that copies of the medical portion of the application were not attached to the policies was "immaterial" to General American's misrepresentation defense. The court of appeals relied on *Wise v. Mutual Life Insurance Company of New York,* 894 F.2d 140 (5th Cir.1990). In *Wise,* the Fifth Circuit concluded that, according to Texas

7. Although General American also asserted a cross-point that the jury's answers to the attachment questions were established as a matter of law, we do not believe that its statement of facts conclusively proves that the application was attached to the policies. General American's statement of facts under both cross-points consists of citations to the testimony of various witnesses that they were not aware whether the medical portion of the application was attached to the original policy issued to Blake. There is also a reference to insurance agent Dale Weir's testimony that after delivering Fredonia's copy of the policy to General American following Blake's death, he never received any communication from General American that the application was not attached. These citations to the record were prefaced by a statement arguing that because there was no probative evidence that the application was *not* attached, the application must have been attached. Such evidence, even if accepted as true, does not establish attachment as a matter of law.

case law, article 21.35 does not apply to life insurance policies.

The first sentence of Article 21.35 provides:

> Except as otherwise provided in this code, every contract or policy of *life* insurance issued or contracted for in this State shall be accompanied by a written, photographic or printed copy of the application for such insurance policy or contract, as well as a copy of all questions asked and answers given thereto."

TEX.INS.CODE art. 21.35 (Supp.1989) (emphasis added). No doubt article 21.35 as presently worded applies to life insurance policies; however, the word "life", emphasized above, was not added until 1989. Act of 1989, 71st Leg., R.S., ch. 656, § 1, 1989 Tex. Gen.Laws 2163. The act provides that it is to be effective for all claims for payment filed with an insurer after September 1, 1989, but claims made prior to that date are to be governed by the law in effect at that time. *Id.*, § 2, 1989 Tex.Gen.Laws 2163. The beneficiaries made their claims on the policies in 1986. Thus we must determine the meaning of the statute prior to the 1989 amendment.[8]

The federal court in *Wise* stated that its holding was compelled by Texas law as set forth in *First Texas Prudential Insurance Company v. Pedigo*, 50 S.W.2d 1091 (Tex. Comm'n App.1932, holding approved). *Wise*, 894 F.2d at 141. In *Pedigo*, the Texas Commission of Appeals concluded that the predecessor to present article 21.35, article 5049 of the Texas Revised Civil Statutes of 1925, "does not apply to life insurance policies issued after December 31, 1909." *Pedigo*, 50 S.W.2d at 1092. *Pedigo*, in turn, relied on the holding in *American National Insurance Company v. Welsh*, 22 S.W.2d 1063 (Tex. Comm'n App.1930, judgm't adopted), which attempted to reconcile insurance statutes enacted in 1903 and 1909 and re-enacted in the Texas Revised Civil Statutes of 1911 and 1925.

The statute that was to become article 21.35 of the Texas Insurance Code was passed in 1903. Act Adopted March 27, 1903, 28th Leg., R.S., ch. 69, § 1, 1903 Tex. Gen.Laws 94, 95. As reenacted into the Texas Revised Civil Statutes of 1911 at article 4951, it provided in relevant part:

> *Every* contract or policy of insurance issued or contracted for in this State shall be accompanied by a written, photographic or printed copy of the application for such insurance policy or contract, as well as a copy of all questions asked and answers given thereto. The provisions of the foregoing Articles [articles 4947–4949, concerning the misrepresentation defense] shall not apply to policies of life insurance in which there is a clause making such policy indisputable after two years or less, provided premiums are duly paid....

Tex.Rev.Civ.Stat. art. 4951 (1911) (repealed) (emphasis added). From a plain reading of the statute, it would appear that the first sentence of this statute was to apply to all insurance policies of every kind.

In 1909, the legislature enacted another statute which required that all life insurance policies contain a provision that the policy, or the policy and the application, is the entire agreement between the parties, and shall be incontestable after two years. Act Approved March 22, 1909, 31st Leg., R.S., ch. 108, § 22, 1908 Tex.Gen.Laws 192, 200, reenacted at Tex.Rev.Civ.Stat. art. 4741 (1911) (repealed, see now TEX.INS.CODE ANN. art. 3.44(3)).

The court in *Welsh* perceived a conflict between the second sentence of article 4951, and the act of 1909. *Welsh*, 22 S.W.2d at 1064. According to the court, article 4951 permitted the defense of misrepresentation unless premiums had been paid for two years

---

8. The House staff assumed that 21.35 was applicable to life insurance policies:

Currently, the first sentence of Article 21.35, Insurance Code, provides that every contract or policy of insurance issued in Texas shall be accompanied by a copy of the application for such a contract or policy, as well as a copy of all questions asked and answers given. Some have interpreted the provision to apply only to policies of life insurance, rather than to all policies of insurance. S.B. 1644 would clarify the ambiguity.

HOUSE COMM. ON INSURANCE, BILL ANALYSIS, Tex.S.B. 1644 (1989). While the bill analysis is helpful to determine the purpose of the 1989 amendment, it does not control the meaning of the statute prior to that date.

prior to the death of the insured. *Id.*[9] The 1909 act, as embodied in article 4741 of the Revised Civil Statutes of 1911, provided that two years was a period of limitation after which misrepresentation could not be asserted as a defense, without mention of any qualifying condition. *Welsh,* 22 S.W.2d at 1064. The difference was critical because the insured had died less than a year after her life policy issued, but the insurance company did not raise the misrepresentation defense until over two years after the policy date. The insurance company claimed the policy had not become incontestable because premiums had not been paid for the full two years. Relying in part on *Guarantee Life Ins. Co. v. Evert,* 178 S.W. 643, 648 (Tex.Civ. App.—Fort Worth 1915, writ ref'd) (on motion for rehearing), the *Welsh* court concluded that the article 4951 of the Texas Revised Civil Statutes of 1911 applied to all insurance policies except life insurance policies issued after 1909; life insurance policies issued after that date would be controlled by the 1909 Act and article 4741. *Id.* at 1065.

The holding in *Welsh* is overly broad. The first two sentences of article 4951 dealt with entirely different matters. The first sentence required every policy of insurance to include the application. The second sentence concerned the prerequisites for incontestability of life insurance, and it was only this sentence that the *Evert* and *Welsh* courts held conflicted with the 1909 act. It was unnecessary for the court in *Welsh* to hold that all of the provisions of article 4951 did not apply to policies issued after 1909.

The court in *Pedigo* gave *Welsh* a broad reading, and concluded that article 5049 of the Revised Civil Statutes of 1925 (repealed), does not apply to life insurance policies issued after 1909. *Pedigo,* 50 S.W.2d at 1092. The court then proceeded to construe other provisions in the Insurance Code pertaining to life insurance specifically. The court determined that articles 5050 and 4732 of the Revised Civil Statutes of 1925[10] imply that the application must accompany the policy as a part thereof in order for the provisions of the application to have any contractual force. The court distinguished contractual terms from representations relied upon in entering the contract which are collateral to it. The court concluded that "[n]othing is found in the language of these statutes to justify the conclusion that the Legislature intended to render unavailable to the insurer, as a basis for defense, any false representation contained in the application, unless the application accompany the policy as a part of it." *Id.*

*Pedigo* should not have relied on *Welsh*'s broad statements as the basis for holding that the first sentence of article 5049 does not apply to life insurance policies issued after 1909. To the extent that *Pedigo* might be read as finding a conflict between article 5049 and articles 4732 and 5050 such that the more recently enacted provisions should control, we do not believe that such a conflict exists. The Fifth Circuit read *Pedigo* as finding such a conflict, because articles 4732 and 5050 "allow the insurance company the option of attaching or not attaching the application to a life policy," and article 5049's language is mandatory. *Wise,* 894 F.2d at 141. However, it is arguable that these later articles are not concerned with attachment but rather how to make the application part of the insurance *contract.* Article 5050 and the current 21.24 state that the policy shall contain the entire contract, and allow the life insurer to make the application "a part thereof." Insurance case law prior to the enactment of these statutes defined the term "part of" as more than mere attachment. *See Goddard v. East Texas Fire Ins. Co.,* 67 Tex. 69, 1 S.W. 906, 907 (1886) (holding that where a

9. Article 4951 is the predecessor to article 5049 of the Revised Civil Statutes of 1925 which preceded article 21.35 of our present Insurance Code. Tex.Ins.Code art. 21.35; Tex.Rev.Civ.Stat. art. 5049 (1925); Tex.Rev.Civ.Stat. art. 4951 (1911); Acts 1903, 28th Leg., ch. 69.

10. Article 5050 of the Revised Civil Statutes of 1925 provided "Every policy of insurance issued or delivered or issued within this State by any life insurance company doing business within this State, shall contain the entire contract between the parties, and the application therefor may be made a part thereof." Its provisions are now contained in article 21.24 of the Insurance Code. Article 4732 replaced article 4741 of the Revised Civil Statutes of 1911, and now appears as article 3.44(3) of the Insurance Code.

paper was attached to the policy but the policy did not incorporate or even refer to it, it formed no part thereof); *Queen Ins. Co. of America v. May,* 35 S.W. 829, 831 (Tex.Civ. App.1896, no writ) ("Since the policy contained no words of reference to the application, it formed no part thereof."). Moreover, former article 4732 and present article 3.44(3) inform a life insurer that the way to include the application in the contract is to provide in the policy that the policy *and* the application constitute the entire contract. The option given by these articles is not attachment but rather incorporation, of which attachment is a necessary but not sufficient part. *See National Life & Accident Ins. Co. v. Holbrook,* 100 F.2d 780, 782 (5th Cir.), *cert. denied,* 307 U.S. 624, 59 S.Ct. 822, 83 L.Ed. 1502 (1939) (construing article 5050 as providing that the policy shall contain the entire contract and that "the application may be incorporated therein"); *United Founders Life Ins. Co. v. Carey,* 347 S.W.2d 295, 305 (Tex.Civ.App.—Austin 1961), *rev'd on other grounds,* 363 S.W.2d 236 (Tex.1962) (same). Thus it is not inconsistent for life insurers to be subject to both article 21.35, requiring that they attach the application, and articles 21.24 and 3.44(3), giving the option of making the application part of the life insurance contract by not only attaching it but also stating in explicit terms in the policy that it is part of the policy and therefore of the insurance contract. *See* 1 George J. Couch, CYCLOPEDIA OF INSURANCE LAW, § 4:3 (1984) ("The application is ordinarily made a part of the policy by expressly stating in the policy that the application is made a part thereof, or by both making such a reference and attaching a copy of the application to the policy. When a statute requires that the policy state the entire contract, this is the only method of incorporation.").

Therefore, even assuming that the *Wise* court correctly construed *Pedigo* as finding a conflict between the first sentence of article 21.35 and articles 21.24 and 3.44(3), we conclude that such conflict does not exist and is therefore not a justification for not applying the first sentence of article 21.35 to life insurance policies issued after the enactment of these later articles. We overrule *Pedigo's* holding that an insurance company may as-

sert a misrepresentation defense based on misrepresentations in an application that was not attached to the policy. We disapprove of the Fifth Circuit's reliance on *Pedigo* in its *Wise* opinion to the extent the Fifth Circuit sought to declare Texas law.

■ We conclude that prior to the 1989 amendment, article 21.35 of the Texas Insurance Code applied to life insurance policies, and therefore representations in an application not attached to the policy cannot be the basis of a misrepresentation defense. Because the jury findings on this point are material to the viability of General American's defense, and the court of appeals did not perform a review of the legal and factual sufficiency of these findings, we reverse the judgment of the court of appeals and remand this cause to that court for further proceedings consistent with this opinion.