COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-02-116-CV
  
  
BROKEN SPOKE CLUB, INC. AND                                          APPELLANTS
ROBERT G. KAISER
  
V.
   
JAMES MAURICE BUTLER                                                         APPELLEE
  
  
------------
 
FROM THE 367TH DISTRICT COURT OF DENTON COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        Appellants 
Broken Spoke Club, Inc. and Robert G. Kaiser appeal from the trial court’s 
judgment ordering that they take nothing as to their claims against Appellee 
James Maurice Butler and ordering Appellants, among other things, to pay $68,265 
to Appellee. In two issues, Appellants argue that: (1) the trial court 
improperly calculated the amount of damages for unpaid rent recoverable by 
Appellee; and (2) the trial court abused its discretion in denying their motion 
to strike the case from the non-jury docket. We will affirm.
Factual Background and Procedural History
        Appellee 
Butler owned property at the intersection of Highway 423 and Highway 720 in 
Denton County, Texas. In 1998, Appellee leased the premises including the 
property, bar, club, and fixtures known as the Broken Spoke Saloon for three 
years to Appellants. Appellant Kaiser was the owner and operator of the Broken 
Spoke Club, Inc. Appellants agreed to pay Appellee $4,000 per month in rent, and 
they paid Appellee $10,000 as a security deposit. On January 5, 2000, Appellants 
filed suit against Appellee, seeking injunctive relief, a restraining order, and 
damages relating to alleged fraud and misrepresentation in the execution of the 
1998 lease.
        Appellee 
filed an answer and counterclaim on January 21, 2000. The building on the leased 
premises burned on April 20, 2000. On August 3, 2000, Appellee amended his 
original answer, requesting a declaration of proceeds from the casualty 
insurance company, alleging failure of consideration excusing defendant’s 
performance, and alleging Appellants’ failure to pay property taxes and past 
due rent.
        The 
trial court conducted a bench trial on February 28, 2001 and May 7, 2001. After 
Appellants rested, Appellee requested a judgment that Appellants taking nothing 
for any of their claims. The court granted Appellee’s motion, and on May 14, 
2001, the trial court signed an interlocutory judgment ordering that Appellants 
take nothing. The court also directed Appellants “to rebuild and repair the 
buildings situated upon the premises” and directed the district clerk to 
disburse certain insurance funds deposited in the registry of the court. The 
court conducted further proceedings on October 19, 2001 concerning Appellee’s 
counterclaim. On January 8, 2002, the trial court signed a final judgment, 
incorporating the interlocutory judgment and further ordering Appellants to pay 
Appellee $42,500 for unpaid rent, $15,765 for unpaid taxes, and $10,000 for 
attorneys’ fees (a total judgment of $68,265).
Amount of Damages
        In 
their first issue, Appellants complain that they should have been allowed 
offsets for the $10,000 security deposit paid at the time the lease was signed 
and for rent received from third parties during the term of the lease. Appellee 
responds that Appellants received the appropriate offset for subsequent rentals. 
Further, Appellee maintains that Appellants failed to plead for refund of the 
security deposit and that nothing remained of that deposit, anyway, due to the 
damages to the premises.
        “A 
landlord has a duty to mitigate damages if a tenant abandons the leased premises 
in violation of the lease.” Tex. Prop. 
Code Ann. § 91.006(a) (Vernon Supp. 2004-05); see Austin Hill Country 
Realty, Inc. v. Palisades Plaza, Inc., 948 S.W.2d 293, 299 (Tex. 1997) 
(holding that a landlord must “use objectively reasonable efforts to fill the 
premises when [a] tenant vacates in breach of the lease”). Austin Hill 
emphasizes that a landlord’s failure to mitigate does not “give rise to a 
cause of action by the tenant.” 948 S.W.2d at 299. Instead, “the 
landlord’s failure to use reasonable efforts to mitigate damages bars the 
landlord’s recovery against the breaching tenant only to the extent that 
damages reasonably could have been avoided. Similarly, the amount of damages 
that the landlord actually avoided by releasing the premises will reduce the 
landlord’s recovery.” Id.
        On 
appeal, Appellants do not contend that Appellee failed to use reasonable efforts 
to mitigate damages, but they argue that the trial court improperly calculated 
the amount of damages Appellee avoided by releasing the property to a third 
party. See id. Appellants bore the burden of proof as to the amount 
Appellee reduced his damages by releasing the property. See id. Thus, we 
turn to the evidence Appellants rely on to support their claim for reducing 
Appellee’s damages for unpaid rent.
        The 
trial court ordered Appellants to pay $42,500 for unpaid rent. According to 
Appellee, Appellants failed to pay rent in the amount of $4,000 per month for 
eleven months, which totals $44,000.[2]  
Appellants cross-examined Appellee about rent he received during this 
eleven-month period. Appellee testified that after the fire occurred in April 
2000, he leased the property to Steve Justice as follows:
 
Q. When 
did you lease the premises to that gentleman?
 
A. For 
the 4th of July, started the 4th of July from 2000.
 
Q. When 
you say for the 4th of July, you leased the premises for one day, 4th of July 
only?
 
A. No. 
Fireworks season runs ten days around the 4th of July and ten days around New 
Year’s.
 
Q. Can 
you tell me the terms and conditions of the lease you had with the gentleman for 
the lease for fireworks?
 
A. He 
paid me $1,500.
 
Q. He 
paid you $1,500 for what?
 
A. To 
pull his fireworks stand out and set it in my parking lot and sell fireworks.
 
. . . .
 
Q. So 
Mr. Justice paid you one payment of $1,500 to lease the premises after the fire?
 
A. To 
put his fireworks stand over in the corner of my parking lot, yes.
 
Q. Okay. 
And has he since vacated the premises?
 
A. He 
has. Another company leases it now.
 
Q. Well, 
let me ask you this, then, to save time. Since the fire of April of 2000, how 
many other tenants have you leased the premises in question to?
A. I 
leased it to Mr. Justice for the 4th of July last year, over New Year’s of 
last year, and for the 4th of July this year.
 
Q. And 
that’s only $1,500 total?
 
A. No. 
For all three times that totaled $7,500.
 
Q. Okay. 
Anyone else?
 
A. At 
present I have a verbal lease. The Alamo Fireworks people will be leasing it for 
New Year’s and the next 4th of July.
 
Q. And 
how much are you going to -- how much rent will they pay to you as the landlord 
for the premises?
 
A. 
$6,000.
 
Q. And 
who is the person’s name again for the $6,000?
 
A. Alamo 
Fireworks. I don’t know who the individual is that owns that.
 
Q. Alamo 
Fireworks?
 
A. Yes.
 
Q. Okay. 
Anyone else besides Alamo Fireworks and Mr. Justice?
 
A. No.
 
Q. And 
as it pertains to these two tenants, their lease with you was after the fire and 
before February of 2001; is that correct?
 
A. 
That’s correct.
 
Q. Okay. 
And you made a total of $13,500 from these two tenants?
 
A. I 
have not made that yet.
Q. But 
you leased with these two tenants --
 
A. I 
have made $7,500 to date.
 
Q. But 
based on the lease with these two tenants, you are to make $13,500?
 
A. By 
the end of 4th of July of 2002.
 
  
        Appellants 
and Appellee signed their lease on January 20, 1998, but the lease began on 
February 1, 1998 and expired on January 31, 2001. Appellants point to 
Appellee’s testimony and argue that Appellee received rent from Justice for 
the two fireworks seasons surrounding the Fourth of July in 2000 and New 
Year’s Eve on December 31, 2000, both of which were within the term of the 
1998 lease. Appellants argue that, in addition to the $1,500, they should 
receive a further offset of $3,000, for a total offset of $4,500. Appellee 
asserts that the further claimed offset is for rentals after the expiration of 
Appellants’ lease and that the trial court correctly applied only the $1,500 
as an offset to the $44,000 that Appellants owed in back rent.
        Appellee 
testified that, while he received $1,500 for the July 4, 2000 holiday period, he 
also received a total of $7,500 for July 4, 2000, December 31, 2000, and July 4, 
2001. Appellee, however, did not specify what amount he actually received for 
either of the December 31, 2000 and July 4, 2001 dates. Appellants argue that we 
should infer from Appellee’s testimony that he leased the property for $3,000 
for the December 31, 2000 New Year’s Eve holiday.
        We 
cannot indulge Appellants’ request that we “infer” the amount Appellee 
collected from Justice for the lease covering the December 31, 2000 New Year’s 
Eve holiday. It is well settled that damages must be based on competent evidence 
and not on mere speculation. McIver v. Gloria, 140 Tex. 566, 169 S.W.2d 
710, 712 (1943); Citizen’s Nat’l Bank v. Allen Rae Invs., Inc., No. 
2-02-095-CV, 2004 WL 1595732, at *15 (Tex. App.—Fort Worth July 15, 2004, no 
pet. h.) (op. on reh’g); Barbouti v. Munden, 866 S.W.2d 288, 296 (Tex. 
App.—Houston [14th Dist.] 1993, writ denied), overruled on other 
grounds by Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc., 
960 S.W.2d 41, 47 (Tex. 1998); Lakewood Pipe of Tex., Inc. v. Conveying 
Techniques, Inc., 814 S.W.2d 553, 556 (Tex. App.—Houston [1st 
Dist.] 1991, no writ) (op. on reh’g). Here, Appellants failed to meet their 
burden of proving with competent evidence the amount of rent Appellee collected 
from Justice before their own lease expired with Appellee, other than the 
$1,500. See Austin Hill, 948 S.W.2d at 299. Accordingly, we hold 
that the trial court did not err in ordering Appellants to pay Appellee the 
amount of $42,500 for unpaid rent.
        As 
to Appellants’ claim for a refund of their security deposit, Appellants make 
no argument and cite no authority to support their contention that the trial 
court erred by not allowing their security deposit to be applied as an offset to 
their unpaid rent.[3]  Therefore, this argument 
is waived, and we will not address it. See Tex. R. App. P. 38.1(h) (requiring 
appropriate citations to authorities); Fredonia State Bank v. Gen. Am. Life 
Ins. Co., 881 S.W.2d 279, 284 (Tex. 1994) (citing long-standing rule that 
point may be waived due to inadequate briefing).  Accordingly, we overrule 
Appellants’ first issue.
Request to Strike Case from Non-Jury Docket
        In 
their second issue, Appellants argue that the court abused its discretion when 
it denied their motion to strike the case from the non-jury docket.  We 
review a court’s denial of the right to a jury trial under the 
abuse-of-discretion standard.  See Mercedes-Benz Credit Corp. v. Rhyne, 
925 S.W.2d 664, 666 (Tex. 1996).  We must review the entire record to 
determine whether the denial was arbitrary, unreasonable, and without reference 
to guiding principles. Id. (citing Downer v. Aquamarine Operators, Inc., 
701 S.W.2d 238, 241-42 (Tex. 1985)).
        “No 
jury trial shall be had in any civil suit, unless a written request for a jury 
trial is filed with the clerk of the court a reasonable time before the date set 
for trial of the cause on the non-jury docket, but not less than thirty days in 
advance.” Tex. R. Civ. P. 
216(a).  Further, “[u]nless otherwise provided by law, a fee of ten 
dollars if in the district court and five dollars if in the county court must be 
deposited with the clerk of the court within the time for making a written 
request for a jury trial.”  Tex. 
R. Civ. P. 216(b).
        Here, 
Appellants timely paid the jury fee, but they did not make a written request for 
a jury trial.  This case was set for trial on February 2, 2001, but upon 
Appellants’ motion for continuance, the trial was reset for February 28, 2001. 
On February 9, 2001, Appellants filed a motion to strike the case from the 
non-jury docket. When the trial court heard arguments on Appellants’ motion to 
strike on February 23, 2001, they had not made a written request for a jury 
trial. See Tex. R. Civ. P. 
216(a).  Accordingly, we hold that the trial court did not abuse its 
discretion in denying Appellants’ motion to strike the case from the non-jury 
docket in the absence of a timely written request for a jury trial.  See 
id.; Mercedes-Benz, 925 S.W.2d at 666. We overrule Appellants’ 
second issue.
Conclusion
        Having 
overruled both of Appellants’ issues, we affirm the trial court’s judgment.
 
 
                                                          ANNE 
GARDNER
                                                          JUSTICE
  
  
PANEL B:   DAUPHINOT, 
GARDNER, and WALKER, JJ.
 
DELIVERED: August 19, 2004


NOTES
1.  See 
Tex. R. App. P. 47.4.
2.  
Appellants do not dispute this testimony on appeal.
3.  
We also observe that Appellants did not plead for the return of their security 
deposit and offered no proof that Appellee did not return their security deposit 
or that Appellee wrongfully withheld the deposit. See Tex. Prop. Code Ann. §§ 93.004-.006, 
93.011 (Vernon Supp. 2004-05) (governing commercial tenancy security deposits).