In the Interest of I.O. and R.O., Children

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-074-CV

IN THE INTEREST OF I.O. AND R.O., 

CHILDREN

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Ida O. appeals from the trial court’s termination of her parental rights to her children I.O. and R.O.  In a single issue on appeal, appellant contends that the evidence is factually insufficient to support the trial court’s finding that the termination is in the children’s best interest.
(footnote: 2)  We will affirm.

The record shows as follows.  In May 2002 appellant’s boyfriend, Lionel Frazier, put two-year-old R.O. into a bathtub full of water so hot that the skin came off R.O.’s buttocks and blisters formed on his feet.  Frazier did not seek medical treatment for R.O.; instead, he put some ointment on R.O.’s burns and waited seven hours to tell appellant.  Appellant noticed the blisters when she came home from work.  She and Frazier then took R.O. to the hospital, where medical personnel had to cut R.O.’s clothes off and perform skin grafts.  Frazier claimed that I.O., who was five, had given R.O. the bath.  I.O. told his father, grandmother, and CPS investigators that Frazier did it.  

The children were removed from appellant’s home.  I.O. was placed with Christine W., the children’s paternal grandmother, and R.O. was placed in rehabilitative foster care.  Appellant agreed to a CPS safety plan that required her to refrain from allowing Frazier to have contact with the children.  At that time, she also told the trial court that she believed Frazier had abused R.O. 

The children were returned to appellant in February 2003 based on the understanding that appellant had complied with the service plan.  But in June 2003, CPS learned that appellant had continued her relationship with Frazier and was allowing him to pick up the children from daycare, and that Frazier was visiting appellant’s apartment complex.  Appellant had also listed Frazier as the emergency contact at the children’s daycare and the apartment complex and Frazier’s address as her address on the daycare’s emergency contact form.

Appellant testified that she had no choice but to ask Frazier to pick up the children because neither her mother nor Christine would do it.  Conversely, Christine testified that she had initially told appellant on one occasion that she could not pick up the children, but then agreed to do so.  Christine further testified that, on another occasion, after several days of unsuccessful attempts to reach appellant, she had gone to the children’s daycare and encountered Frazier attempting to pick up the children.  Christine testified that the children did not want to leave with Frazier.  

The children were returned to Christine in June 2003.  Appellant did not sever ties with Frazier until September 2003.  At the termination hearing, appellant expressed her continued respect for Frazier and her doubt that Frazier had harmed R.O. intentionally, if at all.  Further, the CPS investigator who oversaw the case testified that appellant’s past duplicity suggested that she was not likely to keep Frazier away from the children in the future.  Appellant also missed six scheduled visitations with the children between September and December 2003, leaving I.O. distraught each time, failed to visit the children at all between December 2003 and February 2004, and did not provide the children any financial support after June 2003.  

Appellant claimed the missed visits between December and February were due to training for a new job at work that did not allow her time off during the week and her discouragement about whether she would be able to regain custody of the children.  Appellant also claimed that she and Christine had a difficult relationship.  CPS, however, had assigned appellant’s case to a case worker who had the flexibility to accommodate appellant’s work schedule and could arrange visits outside of Christine’s home.  

Meanwhile, Christine had had extensive contact with the children before they were placed with her in February 2003 and had allowed appellant and the children to live with her for about three months in early 2000.  A CPS supervisor testified that the children were thriving in her care and doing well in school.  Christine was committed to caring for the children permanently whether or not she received any financial assistance, but was willing to adopt them
(footnote: 3) and would receive an adoption subsidy to help with their care if she did.  Christine was sympathetic to appellant, but considered it unacceptable to return the children to appellant given the possibility that appellant would continue to allow Frazier to have contact with them.  Christine testified:  “[The children are] doing so well now, and to . . . place them back in the home . . . if he’s there . . . will destroy those kids.  It really will.”  

Accordingly, applying the appropriate standard of review,
(footnote: 4) we hold that the evidence is factually sufficient to support the trial court’s finding that termination of appellant’s parental rights is in the children’s best interest.  We overrule appellant’s issue
(footnote: 5) and affirm the trial court’s judgment.

PER CURIAM

PANEL F: CAYCE, C.J.; WALKER and MCCOY, JJ.

DELIVERED: December 9, 2004

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
See
 
Tex. Fam. Code Ann.
 § 161.001(2) (Vernon 2002).

3:
The children’s biological father, Christine’s son, had signed an affidavit relinquishing his parental rights. 

4:
See
 
Tex. Fam. Code Ann.
 § 161.206(a) (Vernon Supp. 2004-05); 
In re C.H.
, 89 S.W.3d 17, 25, 28 (Tex. 2002); 
Holley v. Adams
, 544 S.W.2d 367, 371-72 (Tex. 1976).

5:
Appellant’s argument that she should have been provided a jury trial is waived because it is not briefed.  
See
 
Tex. R. App. P.
 38.1(h); 
Fredonia State Bank v. Gen. Am. Life Ins. Co.,
 881 S.W.2d 279, 284 (Tex. 1994).