COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-074-CV
  
  
  
IN 
THE INTEREST OF I.O. AND R.O.,
CHILDREN
  
  
------------
 
FROM 
THE 323RD DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
 
        Ida 
O. appeals from the trial court’s termination of her parental rights to her 
children I.O. and R.O.  In a single issue on appeal, appellant contends 
that the evidence is factually insufficient to support the trial court’s 
finding that the termination is in the children’s best interest.[2]  We will affirm.
        The 
record shows as follows.  In May 2002 appellant’s boyfriend, Lionel 
Frazier, put two-year-old R.O. into a bathtub full of water so hot that the skin 
came off R.O.’s buttocks and blisters formed on his feet.  Frazier did 
not seek medical treatment for R.O.; instead, he put some ointment on R.O.’s 
burns and waited seven hours to tell appellant.  Appellant noticed the 
blisters when she came home from work.  She and Frazier then took R.O. to 
the hospital, where medical personnel had to cut R.O.’s clothes off and 
perform skin grafts.  Frazier claimed that I.O., who was five, had given 
R.O. the bath.  I.O. told his father, grandmother, and CPS investigators 
that Frazier did it.
        The 
children were removed from appellant’s home.  I.O. was placed with 
Christine W., the children’s paternal grandmother, and R.O. was placed in 
rehabilitative foster care.  Appellant agreed to a CPS safety plan that 
required her to refrain from allowing Frazier to have contact with the 
children.  At that time, she also told the trial court that she believed 
Frazier had abused R.O.
        The 
children were returned to appellant in February 2003 based on the understanding 
that appellant had complied with the service plan.  But in June 2003, CPS 
learned that appellant had continued her relationship with Frazier and was 
allowing him to pick up the children from daycare, and that Frazier was visiting 
appellant’s apartment complex.  Appellant had also listed Frazier as the 
emergency contact at the children’s daycare and the apartment complex and 
Frazier’s address as her address on the daycare’s emergency contact form.
        Appellant 
testified that she had no choice but to ask Frazier to pick up the children 
because neither her mother nor Christine would do it.  Conversely, 
Christine testified that she had initially told appellant on one occasion that 
she could not pick up the children, but then agreed to do so.  Christine 
further testified that, on another occasion, after several days of unsuccessful 
attempts to reach appellant, she had gone to the children’s daycare and 
encountered Frazier attempting to pick up the children.  Christine 
testified that the children did not want to leave with Frazier.
        The 
children were returned to Christine in June 2003.  Appellant did not sever 
ties with Frazier until September 2003.  At the termination hearing, 
appellant expressed her continued respect for Frazier and her doubt that Frazier 
had harmed R.O. intentionally, if at all.  Further, the CPS investigator 
who oversaw the case testified that appellant’s past duplicity suggested that 
she was not likely to keep Frazier away from the children in the future.  
Appellant also missed six scheduled visitations with the children between 
September and December 2003, leaving I.O. distraught each time, failed to visit 
the children at all between December 2003 and February 2004, and did not provide 
the children any financial support after June 2003.
        Appellant 
claimed the missed visits between December and February were due to training for 
a new job at work that did not allow her time off during the week and her 
discouragement about whether she would be able to regain custody of the 
children.  Appellant also claimed that she and Christine had a difficult 
relationship.  CPS, however, had assigned appellant’s case to a case 
worker who had the flexibility to accommodate appellant’s work schedule and 
could arrange visits outside of Christine’s home.
        Meanwhile, 
Christine had had extensive contact with the children before they were placed 
with her in February 2003 and had allowed appellant and the children to live 
with her for about three months in early 2000.  A CPS supervisor testified 
that the children were thriving in her care and doing well in school.  
Christine was committed to caring for the children permanently whether or not 
she received any financial assistance, but was willing to adopt them[3] and would receive an adoption subsidy to help with their 
care if she did.  Christine was sympathetic to appellant, but considered it 
unacceptable to return the children to appellant given the possibility that 
appellant would continue to allow Frazier to have contact with them.  
Christine testified: “[The children are] doing so well now, and to . . . place 
them back in the home . . . if he’s there . . . will destroy those kids. It 
really will.”
        Accordingly, 
applying the appropriate standard of review,[4] we 
hold that the evidence is factually sufficient to support the trial court’s 
finding that termination of appellant’s parental rights is in the children’s 
best interest.  We overrule appellant’s issue[5] 
and affirm the trial court’s judgment.
  
  
                                                                  PER 
CURIAM
 
  
PANEL 
F:   CAYCE, C.J.; WALKER and MCCOY, JJ.
 
DELIVERED: 
December 9, 2004


NOTES
1. 
See Tex. R. App. P. 47.4.
2. 
See Tex. Fam. Code Ann. § 
161.001(2) (Vernon 2002).
3. 
The children’s biological father, Christine’s son, had signed an affidavit 
relinquishing his parental rights.
4. 
See Tex. Fam. Code Ann. § 
161.206(a) (Vernon Supp. 2004-05); In re C.H., 89 S.W.3d 17, 25, 28 (Tex. 
2002); Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976).
5. 
Appellant’s argument that she should have been provided a jury trial is waived 
because it is not briefed.  See Tex. R. App. P. 38.1(h); Fredonia 
State Bank v. Gen. Am. Life Ins. Co., 881 S.W.2d 279, 284 (Tex. 1994).