Opinion issued April 24, 2003
 







     






In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00070-CV




LATIFAH SMITH, Appellant
v. 
TEXAS DEPARTMENT OF PROTECTIVE AND REGULATORY
SERVICES, Appellee




On Appeal from the 328th District Court
Fort Bend County, Texas
Trial Court Cause No. 116096




MEMORANDUM OPINION

          The trial court terminated the parental rights of appellant, Latifah Smith, to
D.S., a four-year-old minor at the time of the bench trial. In six issues for review,
appellant challenges the legal and factual sufficiency of the evidence and raises
constitutional claims. We affirm.
Background
          Appellant was 14 years old when she gave birth to D.S. in March 1997. 
Appellant’s mother died when appellant was 13, and appellant was living with her
father and brother at the time D.S. was born. According to appellant, drugs were
being sold from the family’s house. Appellant testified that her brother was a gang
member, and before D.S. was born, appellant was also in a gang. Appellant also
testified that her brother had sexually abused her. Appellant’s father did not believe
her allegations about the abuse and he did nothing to protect appellant from her
brother. Appellant’s brother also abused D.S. by blowing fumes from an aerosol
inhalant can into the baby’s face. Appellant contacted the Texas Department of
Protective and Regulatory Services (TDPRS), and she and D.S. were removed from
her father’s home and placed in foster care. After staying in one foster home for six
months, appellant and D.S. were eventually placed in the foster care of Ms. E’van
Simien in January 1998. D.S. was less than a year old at the time she and appellant
went to live with Ms. Simien. 
          Ms. Simien provided appellant and D.S. with a stable home environment. 
While living with Ms. Simien, appellant did well in school and did not use illegal
drugs. Appellant turned 18 on July 24, 2000, and could have removed herself and her
daughter from Ms. Simien’s home at that time. Instead, appellant chose to remain in
foster care with Ms. Simien. Appellant understood that, in order to remain in
voluntary foster care at the Simien home, she could not leave for long periods of time. 
However, on October 20, 2000, appellant argued with Simien’s 18-year-old daughter
over washing the dishes. At the time of the argument, D.S. was away from the Simien
home, visiting a family friend for the weekend. Appellant left the Simien home in the
early morning hours of October 21, 2000. 
          Appellant contacted Ms. Simien in the afternoon on October 22nd. Despite
being encouraged to return to her foster home by Ms. Simien and her TDPRS case
worker, appellant did not return to the Simien home. In the meantime, D.S. had
returned to the Simien house after the conclusion of her visit in Louisiana. Appellant
returned to the foster home briefly on the afternoon of October 22nd in order to
gather some of her belongings. Appellant did not attempt to take D.S. with her. 
Instead, appellant left the child with Simien.
          Four days after appellant left the foster home, TDPRS filed its original petition
requesting that TDPRS be appointed temporary managing conservator of D.S., and
that appellant’s parental rights to D.S. be terminated if the child could not be reunited
with appellant. On November 7, 2000, the trial court, following a hearing where
appellant was present, entered temporary orders appointing TDPRS as temporary sole
managing conservator of the child. Appellant was allowed to have supervised
visitation with D.S., and the orders laid out a specific set of required actions that
appellant would need to complete in order to possibly obtain the return of her child. 
These actions included submitting to psychological testing, counseling, and parenting
classes. Appellant also was required to demonstrate that she could establish a safe
and stable home for the child by maintaining employment, arranging for child care,
and providing suitable housing. Appellant was notified that the failure to complete
these actions could result in the restriction or termination of her parental rights.
          Instead of adhering to the court’s order, appellant began a decline from the
progress she had made while living with Ms. Simien. After she left the Simien home,
appellant briefly went to stay with the mother of a friend. However, one month after
leaving Simien’s home, appellant moved back into the home of her father and abusive
brother. The home was described at the hearing. Witnesses stated that dog feces
covered the floor and that appellant appeared nervous while living with her brother
and father. Appellant’s father could not pay the mortgage on the house, however, so
appellant moved in with her uncle for a time. While living with her uncle, appellant
refused to provide her TDPRS caseworker with her uncle’s address or phone number.
          During this time when appellant was living first with her father, then her uncle,
appellant earned money by working as a topless dancer and prostituting herself. In
the spring of 2001, appellant began missing school and eventually dropped out before
taking her eleventh grade final exams. She was using drugs during this period. On
June 8, 2001, TDPRS moved to have appellant evaluated for drug and alcohol abuse.
On June 20, 2001, the court issued an amended temporary order that added drug and
alcohol evaluation to the previous November 2000 conditions. 
          Appellant’s record of attending the counseling sessions required by the
November 2000 temporary orders was mixed. Appellant underwent a psychological
evaluation on December 6, 2000. As a result, psychological counseling was
prescribed. TDPRS referred appellant to Provilla Scruggs for counseling. Although
appellant initially attended the counseling sessions, eventually Scruggs ended the
counseling after appellant failed to appear for seven sessions. Appellant was then
offered counseling with Marie Turcich, but appellant failed to appear for a single
session. Appellant blamed her failure to attend on a variety of transportation
problems. Appellant did complete her parenting classes on March 8, 2001.
          Appellant failed to complete drug counseling and anger management courses. 
After the court-ordered drug testing in June 2001 revealed that appellant used
marihuana and alcohol, TDPRS referred appellant to an outpatient treatment program
called Turning Point in Richmond, Texas. Because the location was not convenient
for appellant, arrangements were later made to attend counseling sessions at a
Turning Point location in Houston, but appellant failed to attend a single session.
          On August 17, 2001, appellant voluntarily enrolled in a program called New
Hope provided by the Star of Hope, a charitable organization. She was referred to
this program by her attorney rather than by TDPRS, although TDPRS was informed
of her placement in the program a few weeks later. At the time of the hearing on
December 3, 2001, appellant was scheduled to complete the drug recovery portion of
the program at the end of December 2001.


 She would then have had the opportunity
to transfer into a transitional living program where housing would be provided and
she could work towards a GED and receive training in basic life skills. Two Star of
Hope employees who had worked with appellant testified that she had made progress
in the program and they were optimistic about her chances for continued success in
the future. Kelley Beecher of TDPRS testified that appellant’s psychological
evaluation had indicated that she would do well in a structured environment, but that 
appellant tends to disregard social rules and act irrationally when out of a structured
situation.
           While living with her father, her uncle, and at the Star of Hope, appellant was
allowed supervised visits with D.S. Ms. Simien often transported D.S. to where
appellant was living for these visits. Appellant missed several potential visits and
some visits lasted less than an hour. Ms. Simien testified that, while appellant was
living with her, appellant did not possess good parenting skills, and that appellant had
often neglected to change D.S.’s diaper or wipe the child’s nose when asked. Ms.
Simien testified that appellant would sometimes become rough with D.S., and that
D.S. had indicated once that appellant had kicked her. Ms. Simien stated that she,
rather than appellant, had been the primary maternal figure in the life of D.S. 
Evidence presented at trial showed that appellant had contributed only $200 worth
of clothing and athletic shoes for her daughter, while Ms. Simien had provided D.S.’s
food and clothing, as well as day care, ice skating lessons, and Sunday School classes
for D.S. 
          At trial, appellant expressed a desire to get her child back. At the time of the
hearing, however, appellant was not in a position where D.S. could live with her, but
she stated that it would potentially be possible for D.S. to live with her under the Star
of Hope’s transitional living program that she hoped to enter.
Trial Court’s Decision
          In order to terminate the parent-child relationship under section 161.001 of the
Family Code, the petitioner must establish one or more of the acts or omissions
enumerated under subdivision (1) of the statute and must also prove that termination
is in the best interest of the child. Tex. Fam. Code Ann. § 161.001 (Vernon 2002 &
Supp. 2003); Richardson v. Green, 677 S.W.2d 497, 499 (Tex. 1984). Both elements
must be established; termination may not be based solely on the best interest of the
child as determined by the trier of fact. Texas Dep’t of Human Servs. v. Boyd, 727
S.W.2d 531, 533 (Tex. 1987). Here, the trial court’s termination order stated that the
court found that (1) appellant failed to comply with the provisions of a court order
that specifically established the actions necessary for the mother to obtain the return
of the child, in violation of section 161.001(1)(O), and (2) appellant violated section
161.001(1)(E) by engaging in conduct or knowingly placing the child with persons
who engaged in conduct which endangered the physical or emotional well-being of
the child. The court also found that termination was in the best interest of the child. 
Additional findings of fact and conclusions of law were filed by the court after
appellant requested them.
Standards of Review
          Appellant challenges the legal and factual sufficiency of the evidence. The
termination of parental rights must be supported by clear and convincing evidence. 
Tex. Fam. Code Ann. § 161.001; In re C.H., 89 S.W.3d 17, 23 (Tex. 2002). The
clear and convincing standard needed to support termination of parental rights is the
degree of proof that will produce in the mind of the trier of fact a firm belief or
conviction as to the truth of the allegations sought to be proved. In re C.H., 89
S.W.3d at 25.
          When, as here, a party without the burden of proof challenges the legal
sufficiency of the evidence, we will sustain the challenge only if, considering the
evidence and inferences in the light most favorable to the finding, there is not more
than a scintilla of evidence supporting it. See Burroughs Wellcome Co. v. Crye, 907
S.W.2d 497, 499 (Tex. 1995); In re B.M.R., 84 S.W.3d 814, 817 (Tex.
App.—Houston [1st Dist.] 2002, no pet.). “More than a scintilla of evidence exists
where the evidence supporting the finding, as a whole, ‘rises to a level that would
enable reasonable and fair-minded people to differ in their conclusions.’” Burroughs
Wellcome, 907 S.W.2d at 499. 
           The correct appellate standard of review for reviewing parental right
termination factual findings is whether the evidence is such that a factfinder could
reasonably form a firm belief or conviction about the truth of the State’s allegations. 
In re C.H., 89 S.W.3d at 25. In reviewing the factual sufficiency, the reviewing court
considers all the evidence in the record, both that which supports and that which
contradicts the trial court’s findings. Id. at 29. When presented with legal and factual
sufficiency challenges, the reviewing court first reviews the legal sufficiency of the
evidence. Glover v. Texas Gen. Indem. Co., 619 S.W.2d 400, 401 (Tex. 1981) (per
curiam). 
Court’s Conclusion on Reunification
          After the trial court issued the order terminating appellant’s parental rights,
appellant requested that the court issue additional findings of fact and conclusions of
law. As one of these additional conclusions of law, the trial court stated, “The Court
concludes by clear and convincing evidence that the child cannot safely be reunified
with Latifah Smith nor may the child be permanently placed with a relative or other
suitable person.” In her first issue for review, appellant contends that the evidence
is legally and factually insufficient to support this conclusion of law. Both appellant
and TDPRS note, however, that this conclusion of law was not one of the original
findings included in the court’s Order of Termination. Both parties agree that this
additional conclusion of law is not an independent statutory ground for termination
of parental rights. See Tex. Fam. Code. Ann. § 161.001(1).
          Appellant presents no argument or authority suggesting how insufficient
evidence for this additional conclusion of law requires reversal of the court’s
judgment. Accordingly, we hold that the issue has been waived because of
inadequate briefing. Tex. R. App. P. 38.1(h); see Fredonia State Bank v. Gen. Am.
Life Ins. Co., 881 S.W.2d 279, 284 (Tex. 1994). We overrule appellant’s first issue.
Conduct Which Endangers the Well-Being of the Child
          In her second issue, appellant asserts the evidence was legally and factually
insufficient to support the court’s conclusion that appellant violated section
161.001(1)(E) by engaging in conduct or knowingly placing the child with persons
who engaged in conduct which endangered the physical or emotional well-being of
the child. The supreme court has stated that while “‘endanger’ means more than a
threat of metaphysical injury or the possible ill effects of a less-than-ideal family
environment, it is not necessary that the conduct be directed at the child or that the
child actually suffers injury.” Boyd, 727 S.W.2d at 533. Rather, “endanger” means
“to expose to loss or injury; to jeopardize.” Id. If evidence shows a course of
conduct that has the effect of endangering the physical or emotional well-being of the
child, then a finding under section 161.001(1)(E) is supported. Id. at 534. Such a
course of conduct need not occur in the presence of the child. See id at 533; In re
B.B., 971 S.W.2d 160, 169 (Tex. App.—Beaumont 1998, pet. denied).
          Among the many findings of fact that the court made were the following: (1)
appellant engaged in prostitution in the summer of 2001; (2) appellant was using
drugs and drugs were being sold out of the home where she lived in the summer of
2001; (3) appellant dropped out of high school; (4) the vast majority, if not all of the
visitations, between appellant and D.S. were initiated by and facilitated by Ms.
Simien, the foster mother, who brought D.S. to appellant each time; (5) a mother-child relationship or bond between appellant and D.S. did not exist prior to
appellant’s abandonment of the child with Ms. Simien. In addition, the evidence
presented at the hearing showed that appellant had chosen to return to, and have D.S.
visit her at, her father’s home—a home which was unsanitary and in which appellant
lived with the brother who had previously abused both her and D.S and blew
chemicals in the child’s face. Evidence also was presented regarding appellant’s
inability to take affirmative steps to improve her situation or solve problems outside
of the structured environment of the Star of Hope—appellant herself testified that the
reason she dropped out of school, and the reason she failed to make most of her
counseling sessions in Turning Point or with her individual counselors, is that she
supposedly never learned to navigate the Houston bus system and was unable to do
so.
Legal and Factual Sufficiency
          The trial court was presented with evidence regarding appellant’s past
prostitution, her history of drug use, and her choice of living situation after leaving
Simien’s home. Additionally, the court heard about appellant’s refusal or inability
to improve her situation by completing her education, arranging transportation or
even learning to navigate public transportation. Ms. Simien testified about
appellant’s refusal or inability to care for D.S. while living in the Simien home. 
Neglecting a child’s physical condition may constitute endangerment. In re M.C.,
917 S.W.2d 268, 270 (Tex. 1996). Further, after leaving the Simien home, appellant
chose to move back in with her father and brother, and appellant arranged to have
D.S. visit her at her father’s home, despite appellant’s brother’s past abuse of both
appellant and D.S. After leaving the Simien home, appellant engaged in prostitution,
lived in a home from which drugs were sold, and proved herself unable to remain
drug-free. Appellant continued her drug abuse and failed to complete her Turning
Point counseling, despite her knowledge that remaining drug-free and attending
counseling sessions were conditions of regaining custody of D.S. A continuation of
illegal drug use and other criminal activity, despite knowledge that parental rights are
in jeopardy, has also been held evidence of “voluntary, deliberate and conscious
conduct” that supports a finding of endangerment under section 161.001(1)(E). 
Robinson v. Texas Dep’t of Protective & Regulatory Servs., 89 S.W.3d 679, 687 (Tex.
AppHouston [1st Dist.] 2002, no pet.). 
          The evidence amply supported the trial court’s finding that appellant engaged
in a course of conduct that had the effect of endangering the physical or emotional
well-being of D.S. Accordingly, we find the evidence presented was legally
sufficient to support the trial court’s finding that appellant endangered D.S. and
violated section 161.001(1)(E). Additionally, considering all the evidence in the
record, both that in support of and contrary to the trial court’s findings, we find that
the evidence was factually sufficient to support the trial court’s finding that appellant
endangered D.S. and violated section 161.001(1)(E). We overrule appellant’s second
issue.Failure to Comply with Provisions of a Court Order
           Only one finding under the termination of parental rights statute is necessary
for a judgment of termination. Robinson, 89 S.W.3d at 687. Because we found that
the evidence was sufficient to support the trial court’s finding that appellant
endangered D.S., we need only determine if the evidence was legally and factually
sufficient to support the best interest finding. Accordingly, we do not reach
appellant’s third issue challenging the legal and factual sufficiency of the evidence
supporting the trial court’s finding that appellant failed to comply with a court order. 
Best Interest of the Child 
          In her fourth issue, appellant challenges the sufficiency of the evidence
supporting the trial court’s determination that termination was in D.S.’s best interest. 
A strong presumption exists that a child’s best interest are served by maintaining the
parent-child relationship. In re B.M.R., 84 S.W.3d at 819. In reviewing the
sufficiency of the evidence to support the best interest finding, we ask “whether the
factfinder could have reasonably formed a firm conviction or belief” that terminating
appellant’s parental rights is in her child’s best interests. Id. Some of the factors an
appellate court may consider in ascertaining the best interest of a child include the
non-exhaustive list set forth in Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.
1976). These include (1) the desires of the child, (2) the current and future emotional
and physical needs of the child, (3) current and future physical danger to the child,
(4) the parental abilities of the person seeking custody, (5) whether programs are
available to assist the person seeking custody in promoting the best interest of the
child, (6) plans for the child by the person seeking custody, (7) stability of the home
or proposed placement, (8) acts or omissions of the parent that may indicate the
parent-child relationship is not proper, and (9) any excuse for acts or omission of the
parent. Id. The State is not required to prove all of the Holley factors, particularly
where there is undisputed evidence that the parent-child relationship endangers the
child’s safety. In re C.H., 89 S.W.3d at 27.  Absence of evidence about some of the
Holley factors does not preclude a factfinder from reasonably forming a strong
conviction that termination is in the child’s best interest. Robinson, 89 S.W.3d at
688. Finally, the same evidence of acts or omissions used to establish grounds for
termination under section 161.001(1) may be probative in determining the best
interest of the child. In re C.H., 89 S.W.3d at 28.
Legal and Factual Sufficiency
          Although D.S. was too young to be able to testify as to her own desires, the
trial court heard testimony that D.S. considers Ms. Simien to be her mother, and that
the two have a close and loving relationship. Although Ms. Simien did testify that
D.S. does care about appellant, and that D.S. would be upset if she were unable to see
appellant, Ms. Simien also stated that appellant refused to see to the daily care of D.S.
and that D.S. saw Ms. Simien, not appellant, as her care-giver. Accordingly, the trial
court found that there was no mother-child relationship between appellant and D.S. 
This court, in In re B.M.R., noted that although B.M.R., a toddler, was too young to
express her wishes on the stand, the evidence supported the trial court’s finding that
termination was in her best interest because the evidence showed that she did not
view the appellant in that case as her father. 84 S.W.3d at 820.
          Second, the trial court heard testimony that Ms. Simien provided for both the
emotional and physical needs of D.S., and that appellant contributed only minimally
to the physical care of her child. Evidence was also presented regarding the stability
of D.S.’s current environment, and appellant’s plans for D.S. should she regain
custody of her daughter. Stability of the proposed home environment is an important
consideration in reviewing the sufficiency of the evidence to determine whether
termination is in a child’s best interests. See, e.g., In re J.M.R., 982 S.W.2d 137, 143
(Tex. App.—Houston [1st Dist.] 1998, no pet.) 
          The evidence presented showed that D.S.’s physical needs have been provided
for, with almost no exception, solely by Ms. Simien. Since the time she left Ms.
Simien’s home, appellant’s sole source of income appears to have been through
prostitution and topless dancing. Ms. Simien testified that she has a steady job that
enables her to provide for D.S. as well as for her own adopted children. At the time
of trial, appellant had attempted to secure family housing in the Star of Hope recovery
program, but she could not affirmatively state that Star of Hope would allow D.S. to
live with her while she completed her recovery programs. No evidence was presented
regarding alternative plans appellant had made in the event Star of Hope did not allow
D.S. to live with appellant, nor did appellant present evidence of her ability to earn
a living to provide for D.S.’s needs. In contrast, Ms. Simien provided D.S. with a
stable and nurturing foster home environment that included ice skating and Sunday
School classes. Ms. Simien indicated at the hearing that she wanted to adopt D.S.,
but that she would continue to care for D.S. with the same attentiveness regardless of
whether she was ultimately able to adopt her or not.  
          Further, we note that the impermanence and uncertainty of appellant’s living
situation, coupled with appellant’s past pattern of returning to live with her father and
abusive brother, call into question appellant’s ability to protect D.S. from future
physical danger. While living with Ms. Simien, appellant demonstrated herself
unable to see to the physical needs of her daughter. Instead, appellant left the care
of D.S. to Ms. Simien. Ms. Simien testified that she attempted to leave D.S. in
appellant’s care at least one day a week while appellant lived with her, but that those
occasions often ended with Ms. Simien having to step in and take care of D.S. when
appellant was unable. Although appellant completed parenting classes after leaving
Ms. Simien’s home, she did not complete other prescribed counseling, nor was she
able to stay off drugs, even when drug testing and counseling were made conditions
of regaining custody of D.S. In Robinson, we held that a mother’s inability to stay
off drugs and to make positive strides towards altering her pattern of illegal behavior 
constituted factually sufficient evidence to support a finding that termination was in
the child’s best interest. 89 S.W.3d at 688.
           In the end, the efforts that appellant have made are simply insufficient to
overcome the overwhelming bulk of evidence that was presented regarding D.S.’s
best interest. While appellant did successfully complete her assigned parenting
classes, she did not complete her assigned counseling sessions, she did not find
permanent housing for herself and D.S., nor did she succeed in staying off drugs. 
During the period she was attempting to regain custody of D.S., appellant worked as
a topless dancer, prostituted herself, and lived in a dangerous home environment with
a brother who had sexually abused her. Accordingly, we hold the evidence was
legally and factually sufficient to support the trial court’s finding that termination was
in D.S.’s best interest. We overrule appellant’s fourth issue.
As Applied Constitutional ClaimsIn her fifth and sixth issues, appellant contends sections of the Family Code
were unconstitutionally applied to her. Appellant raises these claims for the first time
on appeal. As-applied constitutional challenges can not be raised for the first time on
appeal. Dreyer v. Greene, 871 S.W.2d 697, 698 (Tex. 1993). Accordingly, appellant
has not preserved these issues for our review. Tex. R. App. P. 33.1; In re B.M.R., 84
S.W.3d at 817. We overrule appellant’s fifth and sixth issues.
Conclusion
          We affirm the judgment.


                                                             Sherry Radack
                                                             Chief Justice

Panel consists of Chief Justice Radack and Justice Nuchia.