HEAD V. FINLEY

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-296-CV

JACQUELINE C. HEAD, INDIVIDUALLY APPELLANT

AND AS SUCCESSOR TRUSTEE UNDER

THE FTW LIVING TRUST 

V.

ALFRED L. FINLEY AND SUSAN N. FINLEY APPELLEES

------------

FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Jacqueline C. Head appeals the summary judgment rendered in favor of Appellees, Afred L. Finley and Susan N. Finley.  We affirm.

I.  Factual and Procedural Background

In the Spring of 1998, Appellant began looking for a home to purchase in the Fort Worth area.  As part of her search, she attended an open house at Appellees’ home and obtained a Seller’s Disclosure Notice executed by Appellees on July 14, 1997.  The 1997 disclosure denied awareness of any defects in the roof or that the roof needed repair and denied that the house had any “water penetration.”  Appellant directed attorney Leonard Rodes to make an offer on the house.  By letter dated June 3, 1998, Rodes made a conditional offer of $300,000 and informed Appellees that the ultimate buyer would be a trust and not Appellant individually.  Rodes advised that if the pre-contract property inspections were satisfactory, the trust would purchase the house “as is.”

Appellant retained the services of four independent inspectors.  One of the inspections was performed by Affordable Inspections, Inc. on June 19, 1998.  Although Affordable Inspections determined that the roof was “[p]erforming its function as intended” at the time of the inspection, the inspector identified defective conditions, which included a condensation problem and water penetration damage in the dining room and garage.  Rodes and Appellees executed an earnest money contract for the purchase of the home in July 1998.  As part of that agreement, Rodes checked a box stating that he had not received a Seller’s Disclosure Notice and reserved the right to terminate the contract if he did not receive a notice within two days.  Appellees provided Rodes with an updated Seller’s Disclosure Notice that was executed on July 15, 1998.  Rodes acknowledged receipt of the 1998 Seller’s Disclosure Notice by initialing each page and signing the acknowledgment in his capacity as Trustee of the FTW Living Trust.  The 1998 disclosure advised that the roof was damaged in a hail storm and repaired in 1995, as previously stated in the 1997 disclosure.  The 1998 disclosure acknowledged that the house had a defective roof, windows, walls, plumbing, sidewalks, and fence.  Rodes completed the trust’s purchase of the home on July 23, 1998.

Less than four months after the purchase, Appellant had the property inspected by a structural engineer.  During the inspection, the engineer discovered defects in the home, including a defective roof that needed replacement and a leak that caused substantial water penetration to the interior of the home.  Appellant claims that Appellees knew of the defects and affirmatively concealed them from Appellant.

Appellant filed suit against Appellees, Affordable Inspections, and John Fox, a licensed inspector who performed an inspection on the home.  Appellant asserted Deceptive Trade Practices Act (DTPA) violations and fraud claims against Appellees, and breach of warranty, breach of contract, negligence, and DTPA claims against Affordable Inspections and Fox.  The trial court awarded summary judgment against Affordable Inspections and Fox in the amount of $348.27 on January 24, 2003.  In doing so, the trial court found that Appellant’s DTPA causes of action were exempted by the professional services clause in section 17.49(c).  
Tex. Bus. & Com. Code Ann.
 § 17.49(c) (Vernon Supp. 2004).  Although the trial court rendered judgment against Affordable Inspections and Fox as to the negligence and breach of contract claims, the court found that damages were limited by a limitation of liability clause in the contract between the parties to $348.47.  The trial court noted that this amount was tendered to Appellant on December 11, 2001, and the tender was rejected.  The court ordered judgment against Appellant for attorneys’ fees in the amount of $25,861.58.

On April 1, 2003, Appellees filed no evidence and traditional motions for summary judgment asserting the following grounds:

1. Appellant failed to produce any evidence that:

a. Appellees knew mold existed in the house at the time of sale;

b. Appellees knew of any water penetration damage at the time of the sale;

c. mold actually existed at the house at the time of the sale;

d. water penetration damage existed at the house at the time of the sale;

e. water penetration damage or mold existed at the time Appellees executed the Seller’s Disclosure Statement; and 

f. the Trustee of the FTW Living Trust relied upon any statements made by Appellees.

2. Appellants claims are barred as a matter of law because “as is” contracts negate causation.

3. Appellant is not a consumer under the DTPA.

4. Appellant lacks standing to sue in her individual capacity.

5. Appellant admitted she did not rely on the 1998 Seller’s Disclosure Statement.

The record includes a response filed by Appellant on May 16, 2003, and a reply filed by Appellees on May 22, 2003.  On July 7, 2003, the trial court signed a final summary judgment in favor of Appellees, ordering Appellant to pay $75,000 in attorneys’ fees and $5,000 in costs.  The trial court’s judgment did not specify which grounds it relied upon in granting Appellees’ summary judgment motion.  This appeal ensued.  

II. Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  
Tex. R. Civ. P.
 166a(c); 
S.W. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002); 
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.  
S.W. Elec. Power Co., 
73 S.W.3d at 215;
 Rhone-Poulenc, Inc. v. Steel,
 997 S.W.2d 217, 223 (Tex. 1999); 
Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.
, 391 S.W.2d 41, 47 (Tex. 1965).  Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant.  
Great Am.
, 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence are disregarded and the evidence favorable to the nonmovant is accepted as true.  
Rhone-Poulenc,
 997 S.W.2d at 223; 
Harwell v. State Farm Mut. Auto. Ins. Co.
, 896 S.W.2d 170, 173 (Tex. 1995).  Evidence that favors the movant's position will not be considered unless it is uncontroverted.  
Great Am.
, 391 S.W.2d at 47.

A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff’s cause of action cannot be established.  
Elliott-Williams Co. v. Diaz
, 9 S.W.3d 801, 803 (Tex. 1999).  The defendant as movant must present summary judgment evidence that negates an element of the plaintiff’s claim.  
Centeq Realty, Inc. v. Siegler
, 899 S.W.2d 195, 197 (Tex. 1995).  Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant.  
Id.

III. Discussion

When a summary judgment order is general and does not specify the grounds on which the trial court granted summary judgment, on appeal the non-movant must negate any grounds on which the court could have granted the summary judgment.  
FM Props. Operating Co. v. City of Austin
, 22 S.W.3d 868, 872-73 (Tex. 2000).  Accordingly, in nine issues, Appellant challenges each of the grounds asserted in Appellees’ motion for summary judgment, as well as the trial court’s order to pay attorneys’ fees and costs.

A. Standing

Because Appellant’s standing issues are potentially dispositive of her individual claims, we first address whether Appellant is a “consumer” under the DTPA and whether she has standing to sue in her individual capacity.  Under the DTPA, a consumer is defined as one who acquires by purchase or lease any goods or services.  
Tex. Bus. & Com. Code Ann.
 § 17.45(4) (Vernon 2002).  The Texas Supreme Court has stated that the DTPA, under the rule of liberal construction, must be given its most comprehensive application without doing any violence to its terms.  
Cameron v. Terrell & Garrett, Inc.
, 618 S.W.2d 535, 541 (Tex. 1981).  A party's consumer status does not turn on whether there is a contractual relationship with the defendant, but rather, it is determined by the party's relationship to the transaction.  
Arthur Andersen & Co. v. Perry Equip. Corp.
, 945 S.W.2d 812, 815 (Tex. 1997).  Consequently, a person does not have to be a direct purchaser in order to qualify as a consumer under the DTPA. 
 Kennedy v. Sale
, 689 S.W.2d 890, 892-93 (Tex. 1985); 
Lukasik v. San Antonio Blue Haven Pools, Inc
., 21 S.W.3d 394, 401 (Tex. App.—San Antonio 2000, no pet.).  In limited circumstances, a third party may qualify as a consumer if the transaction was specifically intended to benefit the third party and the good or service was rendered to benefit the third party.  
See Kennedy
, 689 S.W.2d at 892-93.  Whether a plaintiff is a consumer is a question of law.  
Wright v. Gundersen
, 956 S.W.2d 43, 47 (Tex. App.—Houston [14th Dist.] 1996, no writ).

The summary judgment evidence before us establishes that Appellant falls within the narrow scope of circumstances wherein a third party qualifies as a consumer under the DTPA.  Appellant provided uncontroverted summary judgment evidence that the house was purchased as Appellant’s personal residence at the direction of Appellant, settlor of the trust.  Furthermore, the note executed for the purchase of the home indicates that Appellant, in addition to the trust, was personally liable as a borrower on the loan.

Appellees, citing several cases as authority, assert that Appellant is not a consumer under the DTPA because she is merely a beneficiary of the trust.  Those cases, however, are distinguishable.  Two of the cases cited by Appellees held that the plaintiffs were not consumers under the DTPA because they were incidental beneficiaries to the purchase.  
See Querner v. Rindfuss
, 966 S.W.2d 661, 668 (Tex. App.—San Antonio 1998, pet. denied); 
Vinson & Elkins v. Moran
, 946 S.W.2d 381, 407-08 (Tex. App.—Houston [14th Dist.] 1997, writ dism’d by agr.).  Here, Appellant is more than a mere incidental beneficiary of the purchase—the house was purchased as Appellant’s residence, specifically for her benefit.  A third case cited by Appellees denied consumer status under the DTPA because plaintiffs acquired a home through inheritance and not through “purchase or lease” as required by the Act.  
See March v. Thiery
, 729 S.W.2d 889, 896 (Tex. App.—Corpus Christi 1987, no writ); 
see
 
also 
Tex. Bus. & Com. Code Ann.
 § 17.45(4).  The house in the present case was purchased, as opposed to inherited, and is therefore distinguishable from 
Thiery
.  729 S.W.2d at 896.  Finally, Appellees cite a Fifth Circuit case holding that a father assisting his son in the purchase of a car for the benefit of the son was not a consumer of the DTPA.  
See Plumley v. Landmark Chevrolet, Inc.
, 122 F.3d 308, 311 (5th Cir. 1997).  
Plumley
, like the other cases cited by Appellees, is distinguishable from the facts of this case because Appellant, unlike the plaintiff in
 Plumley
, is the primary beneficiary of the purchase.  
Id
. at 311.

We agree with Appellant that she “was at the core of this transaction” and hold that she is a consumer under the DTPA.  
See
 
Kennedy
, 689 S.W.2d at 892. 
 
Accordingly, she has standing to pursue a DTPA claim in her individual capacity.  

Notwithstanding Appellant’s standing to sue under the DTPA, we must also determine whether Appellant has standing to pursue her fraud claims.  Because we conclude, regardless of whether Appellant has standing, that she cannot establish essential elements of her fraud claims as a matter of law, we need not address Appellant’s standing, as a trust beneficiary, to sue a third party for fraud.  Both of Appellant’s fraud claims require proof that Appellant acted in reliance on false representations made by Appellees.  
See Wal-Mart Stores, Inc. v. Sturges
, 52 S.W.3d 711, 727 (Tex. 2001); 
Tex. Bus. & Com. Code Ann.
 § 27.01(a) (Vernon 2002).  Appellee contends that Appellant cannot establish reliance on false representations by Appellees because the trust, rather than Appellant, purchased the home.  As addressed below in greater detail, the evidence reflects that Rodes, as Trustee of the FTW Living Trust and executor of the contract for the purchase of the home, did not see the 1997 Seller’s Disclosure and did not rely on the 1998 Seller’s Disclosure  in deciding to purchase the home.  We therefore hold that the trial court did not err in dismissing Appellant’s individual claims for common law fraud and statutory fraud in real estate transactions against Appellees.  This leaves us with addressing Appellees’ asserted grounds for summary judgment as they apply to Appellant’s individual claim under the DTPA and the trust’s DTPA and fraud claims.  

B.  Fraud Claims

The essential elements of common law fraud are:  1) a material representation was made; 2) the representation was false; 3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; 4) the speaker made the representation with the intent that the other party should act upon it; 5) the party acted in reliance on the representation; and 6) the party thereby suffered injury.  
Sturges
, 52 S.W.3d at 727.

Under the Texas Business and Commerce Code, a claim for statutory fraud in a real estate transaction consists of:

(1)  false representation of a past or existing material fact, when the false representation is 

(A) made to a person for the purpose of inducing that person to enter into a contract; and

(B) relied on by that person in entering into that contract.

Tex. Bus. & Com. Code Ann.
 § 27.01(a).

Appellant claims that Appellees made numerous representations in a Seller’s Disclosure Notice regarding the condition of the house, which were relied on in making the decision to purchase the home.  The record reflects that Appellees executed a Seller’s Disclosure Notice on July 14, 1997, over a year before the sale of the home.  The 1997 disclosure denied awareness of any defects in the roof or that the roof needed repair and denied that the house had any “water penetration.”  As previously discussed, Appellees provided Rodes with an updated Seller’s Disclosure Notice on his request, which acknowledged that the house had a defective roof, windows, walls, plumbing, sidewalks, and fence.  Rodes acknowledged receipt of the 1998 Seller’s Disclosure Notice by initialing each page and by signing the acknowledgment in his capacity as Trustee of the FTW Living Trust.  At the time of the purchase, Rodes served as Trustee of the FTW Living Trust and executed the contract for sale between Appellees and the trust.  According to Rodes’ affidavit, he:

discussed the offer with Ms. Head.  Because I had not seen the Home or the Sellers Disclosure Notice, I relied upon Ms. Head’s impression that the general condition of the Home was excellent, and her review of the Sellers Disclosure stating that the Home had no known defects, and no damage needing repair.  (I now understand, but did not at the time, that the Sellers Disclosure reviewed by Ms. Head was dated July 15, 1997.)  Since the Home appeared to Ms. Head to be in good shape, and Ms. Head was clearly taken with the Home, I told her that as Trustee of the FTW Trust, which had been newly formed to take title to the Home, I would agree to enter into a contract for the purchase price of $300,000.

. . . .

I have no special knowledge or expertise in the areas of construction or purchasing real estate.  Therefore, I relied upon the report of a licensed Texas Real Estate Inspector to determine that there were no patent defects in the Home, as well as information from the Sellers Disclosure Notice communicated to me by Ms. Head that there were no known latent defects or damage in the home.

. . . .

The Sellers Disclosure Notice dated July 15, 1998 was faxed to me along with, and among, numerous other closing documents, and I initialed all such documents, after the inspection period was over.  No one informed me that [the] July 15, 1998 Sellers Disclosure Notice differed from the 1997 Sellers Disclosure that had led Ms. Head to say to me in June 1998 that there were no known latent defects or damage in the Home, in reliance upon which I had agreed to sign a contract as Trustee of the FTW Trust.

As they did in their motion for summary judgment, Appellees assert that despite Appellant’s alleged reliance, there is no evidence of reliance on the part of Rodes, the Trustee of the FTW Living Trust and executor of the contract for the purchase of the home.  We agree.  In fact, the evidence reflects that Rodes relied on an inspection report and Appellant’s own statements and assurances in reaching the decision to purchase the home.  We further note that when Rodes entered into the earnest money contract on behalf of the trust, he represented that he did not receive a Seller’s Disclosure Notice and retained the right to terminate the contract in the event that he did not receive the notice.  Rodes additionally reserved the right to terminate the contract for any reason within seven days after receiving the notice.

Because Rodes’ affidavit reflects that he did not rely on the Seller’s Disclosure Notices in deciding to purchase the home and did not even see the 1997 notice, we conclude that there is no evidence of reliance as required to maintain claims for common law fraud and statutory fraud in real estate transactions.  
Accordingly, we hold that the trial court did not err in dismissing the trust’s fraud claims.  Having concluded that the trial court’s dismissal of the trust’s fraud claims was proper, we need not address the remaining grounds for summary judgment asserted by Appellees as they relate to these claims.  
See 
Tex. R. App. P.
 47.1.

C.  DTPA Claims

Appellant claims that Appellees violated several provisions of the DTPA, including five laundry list violations under section 17.46(b) and section 17.50(a)(3) prohibiting an unconscionable action or course of action.  
Tex. Bus. & Com. Code Ann.
 § 17.46(b) (Vernon Supp. 2004); § 17.50(a)(3) (Vernon 2002).  Under section 17.50(a) of the DTPA, which addresses laundry list violations, 

(a)  A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish:  

(1) the use or employment by any person of a false, misleading, or deceptive act or practice that is:  

(A) specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter; and 

(B) relied on by a consumer to the consumer's detriment.

Id
. § 17.50(a).  Because there is no evidence of reliance, an essential element of proof for DTPA laundry list violations, the trial court did not err in dismissing Appellant’s individual and representative claims that fall under the DTPA’s laundry list of actions.  
See Henry Schein, Inc. v. Stromboe
, 102 S.W.3d 675, 686 (Tex. 2003).  

Appellant’s sole remaining claim, under section 17.50(a)(3) of the DTPA, provides that a consumer may recover actual damages for “any unconscionable action or course of action” that is the producing cause of damages.  
See
 
Tex. Bus. & Com. Code Ann.
 § 17.50(a)(3).  Here, Appellant claims that her reliance on the 1997 Seller’s Disclosure was the producing cause of her alleged damages.  Thus, for the same reasons that support our conclusion that Appellant’s claims requiring proof of reliance must fail, we conclude that there is no evidence that the Sellers’ Disclosure was the producing cause of Appellant’s alleged damages.  Consequently, Appellant’s claim under section 17.50(a)(3) also fails.

Having concluded that each of Appellants’ claims was properly dismissed, we overrule Appellant’s first eight issues. 

D.  Attorneys’ Fees 

Appellant, in her final issue, poses five arguments in support of her contention that Appellees are not entitled to attorneys’ fees.  First, Appellant argues, without citing any supporting authority, that Appellees cannot recover attorneys’ fees because they did not request them in their motion for summary judgment.  Appellant's argument is inadequately briefed, as it fails to cite any legal authority for the proposition that a failure to request attorneys’ fees in a motion for summary judgment precludes the successful movant from receiving attorneys’ fees.  
See
 
Tex. R. App. P. 
38.1(h); 
Fredonia State Bank v. Gen. Am. Life Ins. Co.
, 881 S.W.2d 279, 284 (Tex. 1994).  Therefore, Appellant presents nothing for review regarding Appellees’ failure to request attorneys’ fees in their summary judgment motion.  

Appellant’s second argument refuting Appellees’ entitlement to attorneys’ fees contends that Appellees never pled for attorneys’ fees under the earnest money contract, which states that:

The prevailing party in any legal proceeding brought under or with respect to the transaction described in this contract is entitled to recover from the non-prevailing party all costs of such proceeding and reasonable attorney’s [sic] fees.

According to Appellant, Appellees’ first amended answer requested attorneys’ fees only under section 17.50(c) of the DTPA, which is the provision allowing attorneys’ fees under the Act for claims brought in bad faith and for the purpose of harassment.  
See
 
Tex. Bus. & Com. Code Ann.
 § 17.50(c).  Appellant claims that Appellees did not subsequently request attorneys’ fees under the contract in their second through fifth amended responses.  The record reflects, however, that Appellees specifically pled a counterclaim for their contractual right to attorneys’ fees in their fifth amended answer:

A.  
Contractual Right to Attorneys’ Fees.

. . . . 

2.  Plaintiffs and Defendants executed an Earnest Money Contract for the sale of a house to Plaintiffs.  Pursuant to the contract, in the event of a dispute arising out of the Earnest Money Contract, the prevailing party in that dispute is entitled to recover attorneys’ fees.

Regardless, Appellant contends that the earnest money contract is extinguished by the merger doctrine.  Appellant relies on judicial precedent holding that where a deed has been executed and accepted as performance on an earnest money contract to convey real estate, all rights and duties created by an earnest money contract are merged into the deed when the seller delivers and the buyer accepts the deed.  
See
 
Commercial Bank, Unincorporated v. Satterwhite
, 413 S.W.2d 905, 909 (Tex. 1967); 
Perry v. Stewart Title Co.
, 756 F.2d 1197, 1205 (5th Cir. 1985).  “Though the terms of the deed may vary from those contained in the contract, still the deed must be looked to alone to determine the rights of the parties.”  
Alvarado v. Bolton
, 749 S.W.2d 47, 48 (Tex. 1988).

The doctrine of merger, however, does not operate to bar claims of fraud, accident, or mistake in transactions leading up to the deed.  
Munawar v. Cadle Co.
, 2 S.W.3d 12, 17 (Tex. App.—Corpus Christi 1999, pet. denied).  As one court of appeals posited, “To adopt the position that written real estate contracts are never actionable upon delivery of a deed, would foreclose every cause of action for deceptive trade practices or fraud in the sale of real estate, unless the misrepresentation appeared in the deed itself.”  
Id
.  Here, Appellees asserted a counterclaim arising out of their defense to claims of fraud and DTPA violations, and logically brought with respect to the transaction described in the earnest money contract.  Appellant relied on the Seller’s Disclosure Notice required under the earnest money contract in asserting her claims, despite the doctrine of merger; we will not allow her to now use that doctrine as a shield from liability for attorneys’ fees.  The Texas Supreme Court has explained that the merger doctrine does not apply in circumstances where the earnest money contract contains contractual obligations apart from the mere conveyance of property.  
Harris v. Rowe
, 593 S.W.2d 303, 307 (Tex. 1979); 
see also Sanchez v. Dickinson
, 551 S.W.2d 481, 486 (Tex. Civ. App.—San Antonio 1977, no writ) (holding merger doctrine did not destroy right of first refusal from contract); 
Pleasant Grove Builders, Inc. v. Phillips
, 355 S.W.2d 818, 823 (Tex. Civ. App.—Dallas 1962, writ ref’d n.r.e.) (holding that agreement to furnish title policy was not superseded by deed).  Appellant agreed that a non-prevailing party in any legal proceeding brought under or with respect to the transaction described in the earnest money contract would pay costs and reasonable attorneys’ fees.  As the non-prevailing party, Appellant is obligated to pay the costs and attorneys’ fees as ordered by the trial court.  

Appellant’s alternative arguments, that Appellees’ claims for attorneys’ fees are barred by the statute of limitations and for lack of presentment, relate to claims for attorneys’ fees under Chapter 38 of the Texas Civil Practices and Remedies Code.  
Tex. Civ. Prac. & Rem. Code Ann.
 § 38.001(8) (Vernon 1997).  Appellees base their request for fees on an express provision in the earnest money contract, not Chapter 38.  Therefore, Appellant’s contentions  concerning Chapter 38 are not relevant to the trial court’s award of attorneys’ fees and costs.

Appellant additionally asserts that if attorneys’ fees and costs were proper, they should be reduced because a portion of the bills from Appellees’ attorney are inadmissible hearsay.  Because Appellant does not discuss or cite authority in her brief on this issue, she has not properly presented this issue on appeal, and we need not address it. 
 See
 
Tex. R. App. P. 
38.1(h); 
Fredonia
, 881 S.W.2d at 284.  Having addressed all of Appellant’s arguments regarding attorneys’ fees in favor of Appellees, we overrule Appellant’s ninth issue.

IV. Conclusion

Because we overrule all of Appellant’s issues, we affirm the trial court’s judgment.

PER CURIAM 

PANEL B: HOLMAN, DAUPHINOT, and MCCOY, JJ.

DELIVERED:  July 29, 2004

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.