COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-296-CV
 
 
JACQUELINE 
C. HEAD, INDIVIDUALLY                                     APPELLANT
AND 
AS SUCCESSOR TRUSTEE UNDER
THE 
FTW LIVING TRUST
 
V.
 
ALFRED 
L. FINLEY AND SUSAN N. FINLEY                                APPELLEES
 
 
------------
 
FROM 
THE 17TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        Appellant 
Jacqueline C. Head appeals the summary judgment rendered in favor of Appellees, 
Afred L. Finley and Susan N. Finley. We affirm.
I. Factual and 
Procedural Background
        In 
the Spring of 1998, Appellant began looking for a home to purchase in the Fort 
Worth area. As part of her search, she attended an open house at Appellees’ 
home and obtained a Seller’s Disclosure Notice executed by Appellees on July 
14, 1997. The 1997 disclosure denied awareness of any defects in the roof or 
that the roof needed repair and denied that the house had any “water 
penetration.” Appellant directed attorney Leonard Rodes to make an offer on 
the house. By letter dated June 3, 1998, Rodes made a conditional offer of 
$300,000 and informed Appellees that the ultimate buyer would be a trust and not 
Appellant individually. Rodes advised that if the pre-contract property 
inspections were satisfactory, the trust would purchase the house “as is.”
        Appellant 
retained the services of four independent inspectors. One of the inspections was 
performed by Affordable Inspections, Inc. on June 19, 1998. Although Affordable 
Inspections determined that the roof was “[p]erforming its function as 
intended” at the time of the inspection, the inspector identified defective 
conditions, which included a condensation problem and water penetration damage 
in the dining room and garage. Rodes and Appellees executed an earnest money 
contract for the purchase of the home in July 1998. As part of that agreement, 
Rodes checked a box stating that he had not received a Seller’s Disclosure 
Notice and reserved the right to terminate the contract if he did not receive a 
notice within two days. Appellees provided Rodes with an updated Seller’s 
Disclosure Notice that was executed on July 15, 1998. Rodes acknowledged receipt 
of the 1998 Seller’s Disclosure Notice by initialing each page and signing the 
acknowledgment in his capacity as Trustee of the FTW Living Trust. The 1998 
disclosure advised that the roof was damaged in a hail storm and repaired in 
1995, as previously stated in the 1997 disclosure. The 1998 disclosure 
acknowledged that the house had a defective roof, windows, walls, plumbing, 
sidewalks, and fence. Rodes completed the trust’s purchase of the home on July 
23, 1998.
        Less 
than four months after the purchase, Appellant had the property inspected by a 
structural engineer. During the inspection, the engineer discovered defects in 
the home, including a defective roof that needed replacement and a leak that 
caused substantial water penetration to the interior of the home. Appellant 
claims that Appellees knew of the defects and affirmatively concealed them from 
Appellant.
        Appellant 
filed suit against Appellees, Affordable Inspections, and John Fox, a licensed 
inspector who performed an inspection on the home. Appellant asserted Deceptive 
Trade Practices Act (DTPA) violations and fraud claims against Appellees, and 
breach of warranty, breach of contract, negligence, and DTPA claims against 
Affordable Inspections and Fox. The trial court awarded summary judgment against 
Affordable Inspections and Fox in the amount of $348.27 on January 24, 2003. In 
doing so, the trial court found that Appellant’s DTPA causes of action were 
exempted by the professional services clause in section 17.49(c). Tex. Bus. & Com. Code Ann. § 
17.49(c) (Vernon Supp. 2004). Although the trial court rendered judgment against 
Affordable Inspections and Fox as to the negligence and breach of contract 
claims, the court found that damages were limited by a limitation of liability 
clause in the contract between the parties to $348.47. The trial court noted 
that this amount was tendered to Appellant on December 11, 2001, and the tender 
was rejected. The court ordered judgment against Appellant for attorneys’ fees 
in the amount of $25,861.58.
        On 
April 1, 2003, Appellees filed no evidence and traditional motions for summary 
judgment asserting the following grounds:
 
1.Appellant 
failed to produce any evidence that:
 
a. 
Appellees knew mold existed in the house at the time of sale;
b. 
Appellees knew of any water penetration damage at the time of the sale;
c. 
mold actually existed at the house at the time of the sale;
d. 
water penetration damage existed at the house at the time of the sale;
e. 
water penetration damage or mold existed at the time Appellees executed the 
Seller’s Disclosure Statement; and
f. 
the Trustee of the FTW Living Trust relied upon any statements made by 
Appellees.
 
2.Appellants 
claims are barred as a matter of law because “as is” contracts negate 
causation.
 
3.Appellant 
is not a consumer under the DTPA.
 
4.Appellant 
lacks standing to sue in her individual capacity.
 
5.Appellant 
admitted she did not rely on the 1998 Seller’s Disclosure Statement.
 
The 
record includes a response filed by Appellant on May 16, 2003, and a reply filed 
by Appellees on May 22, 2003. On July 7, 2003, the trial court signed a final 
summary judgment in favor of Appellees, ordering Appellant to pay $75,000 in 
attorneys’ fees and $5,000 in costs. The trial court’s judgment did not 
specify which grounds it relied upon in granting Appellees’ summary judgment 
motion. This appeal ensued.
II. Standard of 
Review
        In 
a summary judgment case, the issue on appeal is whether the movant met his 
summary judgment burden by establishing that no genuine issue of material fact 
exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); S.W. Elec. 
Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of Houston v. 
Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979). The burden of 
proof is on the movant, and all doubts about the existence of a genuine issue of 
material fact are resolved against the movant. S.W. Elec. Power Co., 73 
S.W.3d at 215; Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 
1999); Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 
S.W.2d 41, 47 (Tex. 1965). Therefore, we must view the evidence and its 
reasonable inferences in the light most favorable to the nonmovant. Great Am., 
391 S.W.2d at 47.
        In 
deciding whether there is a material fact issue precluding summary judgment, all 
conflicts in the evidence are disregarded and the evidence favorable to the 
nonmovant is accepted as true.  Rhone-Poulenc, 997 S.W.2d at 223; Harwell 
v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex. 1995).  
Evidence that favors the movant's position will not be considered unless it is 
uncontroverted.  Great Am., 391 S.W.2d at 47.
        A 
defendant is entitled to summary judgment if the summary judgment evidence 
establishes, as a matter of law, that at least one element of a plaintiff’s 
cause of action cannot be established. Elliott-Williams Co. v. Diaz, 9 
S.W.3d 801, 803 (Tex. 1999). The defendant as movant must present summary 
judgment evidence that negates an element of the plaintiff’s claim. Centeq 
Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995). Once the defendant 
produces sufficient evidence to establish the right to summary judgment, the 
burden shifts to the plaintiff to come forward with competent controverting 
evidence raising a genuine issue of material fact with regard to the element 
challenged by the defendant. Id.
 
III. Discussion
 
        When 
a summary judgment order is general and does not specify the grounds on which 
the trial court granted summary judgment, on appeal the non-movant must negate 
any grounds on which the court could have granted the summary judgment. FM 
Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872-73 (Tex. 2000). 
Accordingly, in nine issues, Appellant challenges each of the grounds asserted 
in Appellees’ motion for summary judgment, as well as the trial court’s 
order to pay attorneys’ fees and costs.
A. Standing
        Because 
Appellant’s standing issues are potentially dispositive of her individual 
claims, we first address whether Appellant is a “consumer” under the DTPA 
and whether she has standing to sue in her individual capacity. Under the DTPA, 
a consumer is defined as one who acquires by purchase or lease any goods or 
services. Tex. Bus. & Com. Code Ann. 
§ 17.45(4) (Vernon 2002). The Texas Supreme Court has stated that the DTPA, 
under the rule of liberal construction, must be given its most comprehensive 
application without doing any violence to its terms. Cameron v. Terrell & 
Garrett, Inc., 618 S.W.2d 535, 541 (Tex. 1981). A party's consumer status 
does not turn on whether there is a contractual relationship with the defendant, 
but rather, it is determined by the party's relationship to the transaction. Arthur 
Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 815 (Tex. 1997). 
Consequently, a person does not have to be a direct purchaser in order to 
qualify as a consumer under the DTPA. Kennedy v. Sale, 689 S.W.2d 890, 
892-93 (Tex. 1985); Lukasik v. San Antonio Blue Haven Pools, Inc., 21 
S.W.3d 394, 401 (Tex. App.—San Antonio 2000, no pet.). In limited 
circumstances, a third party may qualify as a consumer if the transaction was 
specifically intended to benefit the third party and the good or service was 
rendered to benefit the third party. See Kennedy, 689 S.W.2d at 892-93. 
Whether a plaintiff is a consumer is a question of law. Wright v. Gundersen, 
956 S.W.2d 43, 47 (Tex. App.—Houston [14th Dist.] 1996, no writ).
        The 
summary judgment evidence before us establishes that Appellant falls within the 
narrow scope of circumstances wherein a third party qualifies as a consumer 
under the DTPA. Appellant provided uncontroverted summary judgment evidence that 
the house was purchased as Appellant’s personal residence at the direction of 
Appellant, settlor of the trust. Furthermore, the note executed for the purchase 
of the home indicates that Appellant, in addition to the trust, was personally 
liable as a borrower on the loan.
        Appellees, 
citing several cases as authority, assert that Appellant is not a consumer under 
the DTPA because she is merely a beneficiary of the trust. Those cases, however, 
are distinguishable. Two of the cases cited by Appellees held that the 
plaintiffs were not consumers under the DTPA because they were incidental 
beneficiaries to the purchase. See Querner v. Rindfuss, 966 S.W.2d 661, 
668 (Tex. App.—San Antonio 1998, pet. denied); Vinson & Elkins v. Moran, 
946 S.W.2d 381, 407-08 (Tex. App.—Houston [14th Dist.] 1997, writ dism’d by 
agr.). Here, Appellant is more than a mere incidental beneficiary of the 
purchase—the house was purchased as Appellant’s residence, specifically for 
her benefit. A third case cited by Appellees denied consumer status under the 
DTPA because plaintiffs acquired a home through inheritance and not through 
“purchase or lease” as required by the Act. See March v. Thiery, 729 
S.W.2d 889, 896 (Tex. App.—Corpus Christi 1987, no writ); see also 
Tex. Bus. & Com. Code Ann. § 
17.45(4). The house in the present case was purchased, as opposed to inherited, 
and is therefore distinguishable from Thiery. 729 S.W.2d at 896. Finally, 
Appellees cite a Fifth Circuit case holding that a father assisting his son in 
the purchase of a car for the benefit of the son was not a consumer of the DTPA. 
See Plumley v. Landmark Chevrolet, Inc., 122 F.3d 308, 311 (5th Cir. 
1997). Plumley, like the other cases cited by Appellees, is 
distinguishable from the facts of this case because Appellant, unlike the 
plaintiff in Plumley, is the primary beneficiary of the purchase. Id. 
at 311.
        We 
agree with Appellant that she “was at the core of this transaction” and hold 
that she is a consumer under the DTPA. See Kennedy, 689 S.W.2d at 
892. Accordingly, she has standing to pursue a DTPA claim in her individual 
capacity.
        Notwithstanding 
Appellant’s standing to sue under the DTPA, we must also determine whether 
Appellant has standing to pursue her fraud claims. Because we conclude, 
regardless of whether Appellant has standing, that she cannot establish 
essential elements of her fraud claims as a matter of law, we need not address 
Appellant’s standing, as a trust beneficiary, to sue a third party for fraud. 
Both of Appellant’s fraud claims require proof that Appellant acted in 
reliance on false representations made by Appellees. See Wal-Mart Stores, 
Inc. v. Sturges, 52 S.W.3d 711, 727 (Tex. 2001); Tex. Bus. & Com. Code Ann. § 
27.01(a) (Vernon 2002). Appellee contends that Appellant cannot establish 
reliance on false representations by Appellees because the trust, rather than 
Appellant, purchased the home. As addressed below in greater detail, the 
evidence reflects that Rodes, as Trustee of the FTW Living Trust and executor of 
the contract for the purchase of the home, did not see the 1997 Seller’s 
Disclosure and did not rely on the 1998 Seller’s Disclosure in deciding to 
purchase the home. We therefore hold that the trial court did not err in 
dismissing Appellant’s individual claims for common law fraud and statutory 
fraud in real estate transactions against Appellees. This leaves us with 
addressing Appellees’ asserted grounds for summary judgment as they apply to 
Appellant’s individual claim under the DTPA and the trust’s DTPA and fraud 
claims.
B. Fraud Claims
        The 
essential elements of common law fraud are: 1) a material representation was 
made; 2) the representation was false; 3) when the representation was made, the 
speaker knew it was false or made it recklessly without any knowledge of the 
truth and as a positive assertion; 4) the speaker made the representation with 
the intent that the other party should act upon it; 5) the party acted in 
reliance on the representation; and 6) the party thereby suffered injury. Sturges, 
52 S.W.3d at 727.
        Under 
the Texas Business and Commerce Code, a claim for statutory fraud in a real 
estate transaction consists of:
 
(1) 
false representation of a past or existing material fact, when the false 
representation is
 
(A) 
made to a person for the purpose of inducing that person to enter into a 
contract; and
 
(B) 
relied on by that person in entering into that contract.
 
 
Tex. Bus. & Com. Code Ann. § 
27.01(a).
 
        Appellant 
claims that Appellees made numerous representations in a Seller’s Disclosure 
Notice regarding the condition of the house, which were relied on in making the 
decision to purchase the home. The record reflects that Appellees executed a 
Seller’s Disclosure Notice on July 14, 1997, over a year before the sale of 
the home. The 1997 disclosure denied awareness of any defects in the roof or 
that the roof needed repair and denied that the house had any “water 
penetration.” As previously discussed, Appellees provided Rodes with an 
updated Seller’s Disclosure Notice on his request, which acknowledged that the 
house had a defective roof, windows, walls, plumbing, sidewalks, and fence. 
Rodes acknowledged receipt of the 1998 Seller’s Disclosure Notice by 
initialing each page and by signing the acknowledgment in his capacity as 
Trustee of the FTW Living Trust. At the time of the purchase, Rodes served as 
Trustee of the FTW Living Trust and executed the contract for sale between 
Appellees and the trust. According to Rodes’ affidavit, he:

discussed 
the offer with Ms. Head. Because I had not seen the Home or the Sellers 
Disclosure Notice, I relied upon Ms. Head’s impression that the general 
condition of the Home was excellent, and her review of the Sellers Disclosure 
stating that the Home had no known defects, and no damage needing repair. (I now 
understand, but did not at the time, that the Sellers Disclosure reviewed by Ms. 
Head was dated July 15, 1997.) Since the Home appeared to Ms. Head to be in good 
shape, and Ms. Head was clearly taken with the Home, I told her that as Trustee 
of the FTW Trust, which had been newly formed to take title to the Home, I would 
agree to enter into a contract for the purchase price of $300,000.
        . 
. . .
 
I 
have no special knowledge or expertise in the areas of construction or 
purchasing real estate. Therefore, I relied upon the report of a licensed Texas 
Real Estate Inspector to determine that there were no patent defects in the 
Home, as well as information from the Sellers Disclosure Notice communicated to 
me by Ms. Head that there were no known latent defects or damage in the home.
 
. 
. . .
 
The 
Sellers Disclosure Notice dated July 15, 1998 was faxed to me along with, and 
among, numerous other closing documents, and I initialed all such documents, 
after the inspection period was over. No one informed me that [the] July 15, 
1998 Sellers Disclosure Notice differed from the 1997 Sellers Disclosure that 
had led Ms. Head to say to me in June 1998 that there were no known latent 
defects or damage in the Home, in reliance upon which I had agreed to sign a 
contract as Trustee of the FTW Trust.

        As 
they did in their motion for summary judgment, Appellees assert that despite 
Appellant’s alleged reliance, there is no evidence of reliance on the part of 
Rodes, the Trustee of the FTW Living Trust and executor of the contract for the 
purchase of the home. We agree. In fact, the evidence reflects that Rodes relied 
on an inspection report and Appellant’s own statements and assurances in 
reaching the decision to purchase the home. We further note that when Rodes 
entered into the earnest money contract on behalf of the trust, he represented 
that he did not receive a Seller’s Disclosure Notice and retained the right to 
terminate the contract in the event that he did not receive the notice. Rodes 
additionally reserved the right to terminate the contract for any reason within 
seven days after receiving the notice.
        Because 
Rodes’ affidavit reflects that he did not rely on the Seller’s Disclosure 
Notices in deciding to purchase the home and did not even see the 1997 notice, 
we conclude that there is no evidence of reliance as required to maintain claims 
for common law fraud and statutory fraud in real estate transactions. 
Accordingly, we hold that the trial court did not err in dismissing the 
trust’s fraud claims. Having concluded that the trial court’s dismissal of 
the trust’s fraud claims was proper, we need not address the remaining grounds 
for summary judgment asserted by Appellees as they relate to these claims. See 
Tex. R. App. P. 47.1.
C. DTPA Claims
        Appellant 
claims that Appellees violated several provisions of the DTPA, including five 
laundry list violations under section 17.46(b) and section 17.50(a)(3) 
prohibiting an unconscionable action or course of action. Tex. Bus. & Com. Code Ann. § 
17.46(b) (Vernon Supp. 2004); § 17.50(a)(3) (Vernon 2002). Under section 
17.50(a) of the DTPA, which addresses laundry list violations,
 
(a) 
A consumer may maintain an action where any of the following constitute a 
producing cause of economic damages or damages for mental anguish:
 
(1) 
the use or employment by any person of a false, misleading, or deceptive act or 
practice that is:
 
(A) 
specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of 
this subchapter; and
 
(B) 
relied on by a consumer to the consumer's detriment.
 
Id. 
§ 17.50(a). Because there is no evidence of reliance, an essential element of 
proof for DTPA laundry list violations, the trial court did not err in 
dismissing Appellant’s individual and representative claims that fall under 
the DTPA’s laundry list of actions. See Henry Schein, Inc. v. Stromboe, 
102 S.W.3d 675, 686 (Tex. 2003).
        Appellant’s 
sole remaining claim, under section 17.50(a)(3) of the DTPA, provides that a 
consumer may recover actual damages for “any unconscionable action or course 
of action” that is the producing cause of damages. See Tex. Bus. & Com. Code Ann. § 
17.50(a)(3). Here, Appellant claims that her reliance on the 1997 Seller’s 
Disclosure was the producing cause of her alleged damages. Thus, for the same 
reasons that support our conclusion that Appellant’s claims requiring proof of 
reliance must fail, we conclude that there is no evidence that the Sellers’ 
Disclosure was the producing cause of Appellant’s alleged damages. 
Consequently, Appellant’s claim under section 17.50(a)(3) also fails.
        Having 
concluded that each of Appellants’ claims was properly dismissed, we overrule 
Appellant’s first eight issues.
D. Attorneys’ 
Fees
        Appellant, 
in her final issue, poses five arguments in support of her contention that 
Appellees are not entitled to attorneys’ fees. First, Appellant argues, 
without citing any supporting authority, that Appellees cannot recover 
attorneys’ fees because they did not request them in their motion for summary 
judgment. Appellant's argument is inadequately briefed, as it fails to cite any 
legal authority for the proposition that a failure to request attorneys’ fees 
in a motion for summary judgment precludes the successful movant from receiving 
attorneys’ fees. See Tex. R. 
App. P. 38.1(h); Fredonia State Bank v. Gen. Am. Life Ins. Co., 
881 S.W.2d 279, 284 (Tex. 1994). Therefore, Appellant presents nothing for 
review regarding Appellees’ failure to request attorneys’ fees in their 
summary judgment motion.
        Appellant’s 
second argument refuting Appellees’ entitlement to attorneys’ fees contends 
that Appellees never pled for attorneys’ fees under the earnest money 
contract, which states that:
 
The 
prevailing party in any legal proceeding brought under or with respect to the 
transaction described in this contract is entitled to recover from the 
non-prevailing party all costs of such proceeding and reasonable attorney’s 
[sic] fees.
 
According 
to Appellant, Appellees’ first amended answer requested attorneys’ fees only 
under section 17.50(c) of the DTPA, which is the provision allowing attorneys’ 
fees under the Act for claims brought in bad faith and for the purpose of 
harassment. See Tex. Bus. & 
Com. Code Ann. § 17.50(c). Appellant claims that Appellees did not 
subsequently request attorneys’ fees under the contract in their second 
through fifth amended responses. The record reflects, however, that Appellees 
specifically pled a counterclaim for their contractual right to attorneys’ 
fees in their fifth amended answer:
 
A. 
Contractual Right to Attorneys’ Fees.
 
                . 
. . . 
 
2. 
Plaintiffs and Defendants executed an Earnest Money Contract for the sale of a 
house to Plaintiffs. Pursuant to the contract, in the event of a dispute arising 
out of the Earnest Money Contract, the prevailing party in that dispute is 
entitled to recover attorneys’ fees.

 
        Regardless, 
Appellant contends that the earnest money contract is extinguished by the merger 
doctrine. Appellant relies on judicial precedent holding that where a deed has 
been executed and accepted as performance on an earnest money contract to convey 
real estate, all rights and duties created by an earnest money contract are 
merged into the deed when the seller delivers and the buyer accepts the deed. See 
Commercial Bank, Unincorporated v. Satterwhite, 413 S.W.2d 905, 909 (Tex. 
1967); Perry v. Stewart Title Co., 756 F.2d 1197, 1205 (5th Cir. 1985). 
“Though the terms of the deed may vary from those contained in the contract, 
still the deed must be looked to alone to determine the rights of the 
parties.” Alvarado v. Bolton, 749 S.W.2d 47, 48 (Tex. 1988).
        The 
doctrine of merger, however, does not operate to bar claims of fraud, accident, 
or mistake in transactions leading up to the deed. Munawar v. Cadle Co., 
2 S.W.3d 12, 17 (Tex. App.—Corpus Christi 1999, pet. denied). As one court of 
appeals posited, “To adopt the position that written real estate contracts are 
never actionable upon delivery of a deed, would foreclose every cause of action 
for deceptive trade practices or fraud in the sale of real estate, unless the 
misrepresentation appeared in the deed itself.” Id. Here, Appellees 
asserted a counterclaim arising out of their defense to claims of fraud and DTPA 
violations, and logically brought with respect to the transaction described in 
the earnest money contract. Appellant relied on the Seller’s Disclosure Notice 
required under the earnest money contract in asserting her claims, despite the 
doctrine of merger; we will not allow her to now use that doctrine as a shield 
from liability for attorneys’ fees. The Texas Supreme Court has explained that 
the merger doctrine does not apply in circumstances where the earnest money 
contract contains contractual obligations apart from the mere conveyance of 
property. Harris v. Rowe, 593 S.W.2d 303, 307 (Tex. 1979); see also 
Sanchez v. Dickinson, 551 S.W.2d 481, 486 (Tex. Civ. App.—San Antonio 
1977, no writ) (holding merger doctrine did not destroy right of first refusal 
from contract); Pleasant Grove Builders, Inc. v. Phillips, 355 S.W.2d 
818, 823 (Tex. Civ. App.—Dallas 1962, writ ref’d n.r.e.) (holding that 
agreement to furnish title policy was not superseded by deed). Appellant agreed 
that a non-prevailing party in any legal proceeding brought under or with 
respect to the transaction described in the earnest money contract would pay 
costs and reasonable attorneys’ fees. As the non-prevailing party, Appellant 
is obligated to pay the costs and attorneys’ fees as ordered by the trial 
court.
        Appellant’s 
alternative arguments, that Appellees’ claims for attorneys’ fees are barred 
by the statute of limitations and for lack of presentment, relate to claims for 
attorneys’ fees under Chapter 38 of the Texas Civil Practices and Remedies 
Code. Tex. Civ. Prac. & Rem. Code 
Ann. § 38.001(8) (Vernon 1997). Appellees base their request for fees on 
an express provision in the earnest money contract, not Chapter 38. Therefore, 
Appellant’s contentions concerning Chapter 38 are not relevant to the trial 
court’s award of attorneys’ fees and costs.
        Appellant 
additionally asserts that if attorneys’ fees and costs were proper, they 
should be reduced because a portion of the bills from Appellees’ attorney are 
inadmissible hearsay. Because Appellant does not discuss or cite authority in 
her brief on this issue, she has not properly presented this issue on appeal, 
and we need not address it. See Tex. 
R. App. P. 38.1(h); Fredonia, 881 S.W.2d at 284. Having addressed 
all of Appellant’s arguments regarding attorneys’ fees in favor of 
Appellees, we overrule Appellant’s ninth issue.
IV. Conclusion
        Because 
we overrule all of Appellant’s issues, we affirm the trial court’s judgment.
 
 
                                                                  PER 
CURIAM
 
 
PANEL 
B:   HOLMAN, DAUPHINOT, and MCCOY, JJ.
 
DELIVERED: 
July 29, 2004

 
NOTES
1.  
See Tex. R. App. P. 47.4.