

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00114-CV

IN THE INTEREST OF B.A., A
CHILD

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant C.W. appeals the trial court's order terminating her parental rights to her daughter, B.A. In a single issue, C.W. challenges the legal and factual sufficiency of the evidence to support the trial court's family code section 161.001(2) finding that termination of the parent-child relationship between C.W. and B.A. is in B.A.'s best interest. We will affirm.

B.A. was born in November 2008. She was approximately sixteen months old at the time of the termination trial in March 2010. B.A.'s mother is twenty-four-year-old C.W. D.A. is B.A.'s alleged biological father.

------

[1]*See* Tex. R. App. P. 47.4.

C.W. began using cocaine and ecstasy, her drugs of choice, at age nineteen or twenty.[2] She tested positive for cocaine and opiates when she was about five months' pregnant with B.A. and admitted at trial that she used cocaine "[p]robably daily" at that time. C.W. knew she was pregnant with B.A. when she used illegal drugs but did so "[b]ecause [she] really didn't want [her] baby at first." C.W. claimed she quit using illegal drugs about two to three months before B.A. was born.

B.A. tested positive for cocaine when she was born. CPS opened a case for her, and she was voluntarily placed with C.W.'s uncle's wife, C.A. At some point thereafter, C.A. turned B.A.'s care over to C.W.'s friend, L.S. In October 2009, B.A. was placed with her paternal grandmother, S.A., where she remained until trial.

TDFPS developed a service plan for C.W., which included a psychological evaluation, a drug and alcohol assessment with Merit Family Services, drug tests, individual counseling, and parenting classes. C.W. completed the psychological evaluation, performed a few individual counseling sessions, did not follow through with additional parenting classes, and attended Merit sporadically before being discharged from the program the month before trial for not completing her services.

C.W. testified that she did not participate in Merit's services much during January, February, and March 2009 and that she used drugs during that time,

[2]C.W. also used marijuana.

2

including ecstasy.  C.W. refused to submit to drug tests in October 2009 and on November 14, 2009, but she performed a drug test on November 19, 2009, and tested positive for cocaine, opiates, and OxyContin.  C.W. tested positive for cocaine and opiates again in February 2010 and tested positive for cocaine, opiates (morphine and heroin metabolite), and benzoylmethylecgonine in March 2010, the same month of the trial.  D.A. and Shelly,[3] C.W.'s friend, both tested positive for drugs at some point during the case.  D.A. executed an affidavit during trial voluntarily relinquishing his parental rights to B.A.

On March 23, 2010, the trial court signed an order terminating C.W.'s parental rights to B.A., finding by clear and convincing evidence that C.W. had (1) knowingly placed or knowingly allowed B.A. to remain in conditions or surroundings that endangered B.A.'s physical or emotional well-being, (2) engaged in conduct or knowingly placed B.A. with persons who engaged in conduct that endangered B.A.'s physical or emotional well-being, and (3) caused B.A. to be born addicted to alcohol or a controlled substance.  *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E), & (R) (Vernon Supp. 2010).  The trial court also found by clear and convincing evidence that termination of the parent-child relationship between C.W. and B.A. is in B.A.'s best interest.  *Id.* § 161.001(2).  C.W. appeals.

---

[3]We use an alias (Shelly) to refer to C.W.'s friend because her initials are identical to those of B.A.'s paternal grandmother, S.A.

3

In her only issue, C.W. argues that the evidence is legally and factually insufficient to support the trial court's finding that termination of the parent-child relationship between her and B.A. is in B.A.'s best interest.[4]

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one ground listed under subsection (1) of the statute and must also prove that termination is in the best interest of the child. *Id.* § 161.001; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

Termination decisions must be supported by clear and convincing evidence. Tex. Fam. Code Ann. §§ 161.001, 161.206(a) (Vernon 2008). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (Vernon 2008).

In reviewing the evidence for legal sufficiency in parental termination cases, we must determine whether the evidence is such that a factfinder could

---

[4]C.W. identifies three additional issues in the "Issues Presented" section of her brief that challenge the sufficiency of the evidence to support the trial court's family code section 161.001(1)(D), (E), and (R) findings, but she does not include any argument on these issues in her brief. To the extent C.W. intended to raise these three issues, they are waived for noncompliance with rule of appellate procedure 38.1(i) and for inadequate briefing. *See* Tex. R. App. P. 38.1(i) (requiring appellant's brief to contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (discussing "long-standing rule" that issue may be waived due to inadequate briefing).

reasonably form a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We must review all the evidence in the light most favorable to the finding and judgment. *Id.* This means that we must assume that the factfinder resolved any disputed facts in favor of its finding if a reasonable factfinder could have done so. *Id.* We must also disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* We must consider, however, undisputed evidence even if it is contrary to the finding. *Id.* That is, we must consider evidence favorable to termination if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *Id.* We must therefore consider all of the evidence, not just that which favors the verdict. *Id.* But we cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses, for that is the factfinder's province. *Id.* at 573, 574. And even when credibility issues appear in the appellate record, we must defer to the factfinder's determinations as long as they are not unreasonable. *Id.* at 573.

In reviewing the evidence for factual sufficiency, we must give due deference to the factfinder's findings and not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the termination of the parent-child relationship would be in the best interest of the child. Tex. Fam. Code Ann. § 161.001(2); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If, in light of the entire record, the disputed evidence that a

5

reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a), (b) (Vernon 2008) (listing factors that should be considered in evaluating the parent's willingness and ability to provide the child with a safe environment). Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include: (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered

6

when appropriate. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child. *Id.* On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id.*

The record demonstrates that C.W. has engaged in a continuing course of illegal drug use: she used illegal drugs before she was pregnant with B.A.; while she was pregnant with B.A.; and after she was pregnant with B.A, including in the same month of the termination trial. C.W.'s knowing use of illegal drugs while she was pregnant with B.A. caused B.A. to test positive for cocaine when she was born. C.W. also associated with individuals who tested positive for illegal drugs (D.W. and Shelly) and admitted that she has friends who can get drugs for her. At trial, C.W. denied that her use of illegal drugs is bad for her and even admitted that she continues to use illegal drugs. She testified:

> Q. All right. You said that CPS says that drugs are bad. Do you think drugs are bad?
>
> A. I think anything is bad.
>
> Q. All right.
>
> A. *But that would be most of y'all's opinion. I used the drug, so, obviously, it's not bad to me because I continue to use.* (emphasis added).

Further, and significantly, C.W. testified that she *did not* share TDFPS's opinion that it is in B.A.'s best interest to be raised in a home without any drug use. She testified:

7

Q. Do you believe that it is in [B.A.'s] best interest to be raised in a home without any drug use?

A. [B.A.], yes. I mean, that would be y'all's opinion.

Q. But that is also your opinion; is that right?

A. *No. It's not. Because y'all try to make drugs to be something bad. Like if you're high, you can't provide for your child and that's a lie.* (emphasis added).

Aside from C.W.'s admitted continuing illegal drug use and denial that it is in B.A.'s best interest to be raised in a home without any illegal drug use, the trial court admitted a judgment convicting C.W. of theft by check and a judgment adjudicating her guilty of prostitution. Further, C.W. testified that she does not have a job but that she works with her uncle cleaning houses sometimes, that she does not have a bank account, that she has only $100 to her name, and that she owns a car but does not have car insurance. A TDFPS employee testified that it is in B.A.'s best interest to terminate C.W.'s parental rights, and S.A. testified that it is in B.A.'s best interest to be raised by her and that she wants to adopt B.A. if B.A. becomes available for adoption.

Considering the relevant statutory factors in evaluating C.W.'s willingness and ability to provide B.A. with a safe environment and the *Holley* factors—including the emotional and physical needs of B.A. now and in the future, the emotional and physical danger to B.A. now and in the future, C.W.'s parental abilities, and the acts or omissions of C.W. which may indicate that the existing parent-child relationship is not a proper one—we hold that, in light of the entire

record and giving due consideration to evidence that the trial court could have reasonably found to be clear and convincing, the trial court could reasonably have formed a firm belief or conviction that termination of C.W.'s parental rights to B.A. is in B.A.'s best interest. Accordingly, the evidence is legally and factually sufficient to support the trial court's section 161.001(2) best interest finding. *See, e.g., In re D.M.*, 58 S.W.3d 801, 815 (Tex. App.—Fort Worth 2001, no pet.) (holding evidence sufficient to support jury's best interest finding); *In re J.W.*, No. 02-08-00211-CV, 2009 WL 806865, at *6–7 (Tex. App.—Fort Worth Mar. 26, 2009, no pet.) (mem. op.) (holding evidence sufficient to support trial court's best interest finding). We overrule C.W.'s only issue and affirm the trial court's order terminating the parent-child relationship between C.W. and B.A.


                                                    BILL MEIER
                                                    JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and MEIER, JJ.

DELIVERED:  December 16, 2010